**In re Dennis B. WISE, Debtor.**

**ALASKA TEAMSTER–EMPLOYER PENSION TRUST, Plaintiff,**

**v.**

**Dennis B. WISE, Defendant.**

**Bankruptcy No. F89–00101–HAR.**
**Adv. No. F–89–00101–003–HAR.**

United States Bankruptcy Court, D. Alaska.

Sept. 27, 1990.
Memorandum Denying Motion for Reconsideration Oct. 16, 1990.

Rebecca Copeland, Groh, Eggers & Price, Anchorage, Alaska, for plaintiff.

David Bundy, Guess & Rudd, Anchorage, Alaska, for defendant.

## MEMORANDUM REGARDING CROSS SUMMARY JUDGMENT MOTIONS

HERBERT A. ROSS, Bankruptcy Judge.

**Index**    Page

1. PROCEDURE AND HOLDING ....................................... 538
2. JURISDICTION .................................................. 539
3. FACTS ......................................................... 539
4. TEAMSTER TRUST'S CLAIM AGAINST WISE ARISING OUT OF WES- 540
   PAC LEASES
5. TEAMSTER TRUST'S CLAIM AGAINST WISE FOR RETENTION OF 542
   SECURITY DEPOSITS HE RECEIVED FROM TENANTS
6. PRIORITY OF CLAIM UNDER § 507(a)(6) ............................ 542
7. DISCHARGEABILITY UNDER § 523(a)(4) ............................. 543
   7.1. The Wespac Security Deposits .................................. 543
   7.2. The Wise Security Deposits .................................... 543
8. CONCLUSION ................................................... 544
APPENDIX ........................................................ 544

1. *PROCEDURE AND HOLDING*— Plaintiff, Alaska Teamster–Employer Pension Trust (Teamster Trust), moved for summary judgment to establish: (1) the nondischargeability of a claim for approximately $33,501.76 under 11 U.S.C. § 523(a)(4); and, (2) that the Teamster Trust's claim (or some portion of it) is entitled to priority as an aggregate of various consumer claims under 11 U.S.C. § 507(a)(6) (up to a maximum of $900.00 per tenant) arising from various apartment tenants' rights concerning their respective security deposits which they assigned to the Teamster Trust.

Debtor defendant, Dennis Wise, filed a cross-motion for summary judgment to establish that the debt is dischargeable and that any allowable claim of the Teamster

Trust is a general unsecured claim and not a priority claim.

The court will enter a partial summary judgment for the Teamster Trust as follows:

a. The Teamster Trust claim is entitled to 11 U.S.C. § 507(a)(6) priority (up to the $900.00 level for each apartment tenant). See §§ 4, 5, and 6 below.

b. The exact amount due as a result of security deposits received by Wespac Investors Trust (Wespac), the trustor under the deed of trust that Wise foreclosed as beneficiary, is subject to factual uncertainty and cannot be decided on the basis of the present motions. See § 6 below.

c. The unrefunded amount Wise received from tenants as security deposits or prepaid rent after foreclosing against Wespac is $8,450.00. The court is uncertain if the Teamster Trust received assignments of these claims and defers entering judgment until this is established. See §§ 5 and 6 below.

d. Only the $8,450.00 would be nondischargeable under § 523(a)(4) of the Bankruptcy Code, *provided* the Teamster Trust establishes that it has assigned claims for this amount. See § 7.2 below.

The court will enter a partial summary judgment for Wise that the security deposits received by Wespac, but which were not turned over to him when he foreclosed, do not give rise to a nondischargeable claim against him pursuant to § 523(a)(4) of the Bankruptcy Code. See § 7.1 below.

2. *JURISDICTION*—This is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (I).

3. *FACTS*—The facts are:

a—Wise owned an apartment building, Wedgewood Manor Phase I, in Fairbanks in 1981. He was indebted to the Nabalaska & Co. 180, the Teamster Trust's predecessor, on a first deed of trust on Wedgewood Manor Phase I.

b—Wise sold the apartment building to Wespac in 1981. Wespac assumed the Nabalaska deed of trust, and gave Wise a second deed of trust on the apartment building.

c—Wespac rented apartments and took security deposits from tenants. There are 228 apartment units and 128 storage units.

d—Wespac defaulted on its obligation to Wise. Wise foreclosed nonjudicially, but did not give notice of default to the tenants pursuant to AS 34.35.070. He reacquired ownership by foreclosure in May, 1987. Wise claims it was a business judgment not to name the tenants in Wise's foreclosure against Wespac since it was more important to him to keep the tenants undisturbed and in residence than to establish a legal right of a foreclosing mortgagee over existing tenants.

e—Wise only held ownership of the apartment for about three months after he foreclosed since he was in default on Nabalaska's first deed of trust, and Nabalaska foreclosed in August, 1987. Nabalaska gave a statutory notice to all tenants, and foreclosed against their interest in its nonjudicial foreclosure in August of 1987.

f—Wise never received any of the rent deposits collected by Wespac from tenants. Wise claims to have nonetheless, during the three month period he held title, refunded $20,339.50 in deposits to tenants who had been leasing apartments when Wise foreclosed against Wespac. He also admits to receiving $10,500.00 in security deposits after he obtained title, of which $2,050.00 was refunded. Wise did not turn the $8,450.00 balance over to Nabalaska or the Teamster Trust.

g—After Nabalaska foreclosed in August of 1987, it conveyed the apartment building to the Teamster Trust. The Teamster Trust, rather than asserting its priority over the tenants, took assignments of the tenants' rights against Wespac and/or Wise with respect to the rent deposits in which these tenants claimed an interest.

h—The Teamster Trust claims that it is owed $33,501.76 as a result of the assignments to it of tenants' right to their security deposit. It is not clear from the

motions whether these assignments are related only to Wespac's tenants inherited by Wise in his May, 1987 foreclosure or whether some relate to Wise's own new tenants during his three months tenure as landlord.

■ 4. *TEAMSTER TRUST'S CLAIM AGAINST WISE ARISING OUT OF WESPAC LEASES*—Wespac may have collected security deposits from tenants, but Wise has not received those deposits from Wespac. Wise chose not to foreclose the rights of the tenants as a business judgment, but did not promise the tenants that he would refund security deposits he had not received. He acknowledges that he has, nonetheless, voluntarily refunded $20,-330.50 of security deposits which had been given by the tenants to Wespac, but had never been received by him.

The issue is whether his non-judicial foreclosure, without foreclosing out the rights of the Wespac tenants, made Wise liable for damages for those deposits to the tenants, and, by these tenants assignments, to the Teamster Trust. I hold Wise is liable for the Wespac security deposits, although he never received them from Wespac.

The Teamster Trust relies on the sections of the Uniform Residential Landlord and Tenant Act (URLTA), AS 34.03, concerning security deposits, to establish Wise's liability. These are found in AS 34.03.070—34.-03.110. AS 34.03.070 and .110 are reproduced in full in the Appendix to this memorandum.

AS 34.03.070(a) provides that a landlord may receive a security deposit or prepaid rent of a value equal to no more than two months rent. Upon termination of the tenancy, the landlord can apply the security deposit or prepaid rent to damages or unpaid rent, and any balance must be returned to the tenant within a specified time. An itemized notice must be given to the tenant within a prescribed time limit. AS 34.03.070(b), (g).

The security deposit or prepaid rent is to be placed in a trust account if practicable. AS 34.03.070(c). Willful failure to comply subjects a landlord to double damages. AS 34.03.070(d).

AS 34.03.070(f) provides: "The holder of the landlord's interest in the premises at the time of the termination of the tenancy is bound by this section."

. A landlord may limit its liability under AS 34.03.110(a) by a good faith conveyance of the premises to a purchaser who receives an assignment of the security deposit or prepaid rent. Written notice of the transfer must be given to the tenant before the landlord is released from subsequent liability.

The parties have been able to provide me with little authority concerning successor liability for refund of a security deposit. The Teamster Trust has basically relied on its interpretation of the statutory language of AS 34.03.070 and .110 on their face and the case of *Hunter v. J & H Weissberger*, 514 A.2d 871 (N.J.Super.1986). Wise has relied on its own facial interpretation of the statute and its criticism of *Hunter*.

The court also has not been able to find any persuasive case authority. There is an article in ALR, Annotation, *Landlord–Tenant Security Deposit Legislation*, 63 ALR4th 901, 1001 (1988) at § 33 which discusses "Successor landlord's liability" briefly. The annotation cites five cases in its discussion of successor liability, one of which is *Hunter*. The cases are all readily distinguishable because of statutory and factual differences from the case at bar.

A review of 7B *Uniform Laws Annotated* 427 (West 1985) which discusses the Uniform Residential Landlord and Tenant Act was not fruitful either. It indicates that:

> The Alaska Act is a substantial adoption of the major provisions of the Uniform Act, but it contains numerous variations, omissions and additional matters which cannot be clearly indicated by statutory notes.

The Comments and Notes of Decisions to the Uniform Residential Landlord and Tenant Act found in the ULA do not address the issue of successor liability.

*Hunter* involved a pro se litigant's suit to recover a $208.00 security deposit. A New Jersey Superior Court implied succes-

sor liability, although the New Jersey statute did not directly provide for it, on the basis of some cursory language in a committee report of the New Jersey legislature.

There is, however, a stronger argument for the Teamster Trust under Alaska's URLTA. AS 34.03.070(f) is susceptible to the interpretation that the "landlord" responsible to make a refund under AS 34.-03.070(b) does not have to be the one who received the deposit, but can include the one who holds the landlord's interest at the time of termination of a tenant's lease.

Therefore, the court will rely on a reading of the statute on its face. I determine that liability for the Wespac security deposits not paid over and not refunded can be the subject of a valid claim by the Teamster Trust. This interpretation is reached by the following analysis:

   a.  AS 34.03.360(6) defines a "landlord" as follows:

      (6) "landlord" means the *owner*, lessor, or sublessor of the dwelling unit or the building of which it is a part, and it also means a manager of the premises who fails to disclose as required by AS 34.03.080 [emphasis added].

   b.  Under AS 34.03.360(8), an "owner" is:

      (8) "owner" means one or more persons, jointly or severally, in whom is vested all or part of the legal title to property or all or part of the beneficial ownership of property and a right to present use of the premises; the term includes a mortgagee in possession.

   c.  AS 34.03.070(f) provides that the "holder of landlord's interest in the premises" at termination of the tenancy is "bound by" the requirements of AS 34.03.070. Wise was the holder of this interest when Nabalaska's foreclosure terminated the tenants' tenancies. Under the definitions of "landlord" and "owner" in the Alaska URLTA, he was the "landlord" per se under AS 34.03.070 not just "bound by" the duties of the landlord under AS 34.03.070(f). A landlord can relieve itself of the burdens of AS 34.03.070 when there is a good faith transfer of the premises to a purchaser, a transfer of the security deposit, and notice is given to the tenants. *See* AS 34.03.-110(a).

   d.  One of the requirements of AS 34.-03.070(a), (g) is giving an itemized notice of intent to withhold some part of the security deposit, and to return the balance. Cases, not involving successor liability, have interpreted this section of the URLTA in favor of a tenant's right to a refund (and to additional multiple damages) when the proper notice has not been given. *See Schaefer v. Murphey* [131 Ariz. 295] 640 P.2d 857, 859 (Ariz.1982) (landlord's civil suit is not sufficient to meet the statutory requirements of URLTA regarding itemization of damages and notice of intent to offset a security deposit, and tenant was entitled to recover security deposit and double damages); *Geiger v. Wallace* [233 Kan. 656] 664 P.2d 846, 850 (Kans.1983) (failure of landlord to send itemized notice of intent not to refund security deposit to tenant gave tenant the right to recover the deposit plus statutory damages of one and one-half times the deposit).

   e.  Thus, Wise stepped into an obscure statutory trap when he failed to "terminate" the tenancies of Wespac's tenants by giving them notice of his foreclosure in May of 1987. *Compare Adams v. FedAlaska Federal Credit Union*, 757 P.2d 1040, 1042 (Alaska 1988) (indicating junior liens are wiped out by the foreclosure of a senior lien; the same presumably applies to other junior interests such as leases). When Nabalaska *did* terminate the tenancies by its foreclosure in August of 1987, Wise was the "landlord" or the one statutorily responsible for the landlord's duties under AS 34.03.070(f). He did not shed this liability when there was an involuntary conveyance as a result of the Nabalaska foreclosure in August, 1987. *See* AS 34.-03.110(a) which indicates one method

of shedding the continuing liability of a landlord for security deposits under AS 34.03.070.

5. *TEAMSTER TRUST'S CLAIM AGAINST WISE FOR RETENTION OF SECURITY DEPOSITS HE RECEIVED FROM TENANTS*—The answer and pre-trial conference statement of Wise indicated there were no rental deposits received as a result of his three-month tenure as landlord from May, 1987 to August, 1987. In his opposition to summary judgment, however, he admitted having received $10,500.00 in security deposits during his tenure as landlord. $2,050.00 of this was refunded to tenants, but the balance was not returned to tenants or turned over to his successor, Nabalaska or the Teamster Trustee.

The successor liability question is not an issue with respect to these deposits. Therefore, the Teamster Trustee has a valid claim for these deposits *provided* it has assignments to these deposits.

6. *PRIORITY OF CLAIM UNDER § 507(a)(6)*—

■ 11 U.S.C. § 507(a)(6) provides:

(6)  Sixth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

The Teamster Trust claims to have taken assignments of the security deposit claims of tenants of Wespac (and, possibly the tenants who gave their security deposits directly to Wise). While the amount of damages is not settled in my mind, the following is: if there were security deposits held by Wise as landlord or for which he was responsible under AS 34.03.070(f), when Nabalaska foreclosed upon the tenants in August, 1987, this "terminated" the tenants' leases.

This termination negates Wise's argument at pages 5–6 of his Opposition to Motion for Summary Judgment and Cross–

Motion for Summary Judgment (Docket No. 11) that there was no refund obligation because there was no termination of the leases. There was a termination by virtue of the Nabalaska foreclosure.

Wise even admitted in paragraph 4(k) of his answer that the leases of the tenants were terminated by the Nabalaska foreclosure. It is implicit in the pleadings that no notice pursuant to AS 34.03.070(b), (g) was sent by Wise to any tenants concerning any intention to retain any security deposits. Having received no deposits from Wespac, such a notice would not be expected unless Wise were ceding liability.

Though Wise does not cede liability, he is liable under the Alaska URLTA because he did not take the precaution of shutting out the tenants' rights under the URLTA by foreclosing against them as Nabalaska did.

11 U.S.C. § 507(d) bars a subrogee of a § 507(a)(6) claim from stepping into a priority position, but not an assignee. *In re Missionary Baptist Foundation of America, Inc.*, 667 F.2d 1244 (5th Cir.1982) and 3 *Collier on Bankruptcy* ¶ 507.07 (15th ed. 1990). The Teamster Trust is entitled to the same priority as the tenants. Since the tenants' leases were terminated, their claims to a refund and Wise's claim to offset for damages or delinquent rent should be ascertainable at the time of the Nabalaska foreclosure. This readily fits into the description of a § 507(a)(6) consumer deposit claim.

The Teamster Trust has alleged in the complaint that it has assignments from various tenants, and Wise answered that he did not have knowledge sufficient to respond. See ¶ 4(1) of the complaint and answer. However, the Teamster Trust's motion has provided no evidentiary support under oath that the assignments exist. Only copies of a Teamster Trust letter has been attached to the Teamster Trust motion for summary judgment.

Therefore, the motion does not technically comply with F.R.Civ.P. 56, incorporated by Bankruptcy Rule 7056. The court assumes that the Teamster Trust can readily fill this evidentiary gap by supplying a declaration or pointing out Wise's admis-

sion in the record, however, the court will at this point only rule that any assignments of Wespac security deposits, if established, are priority claims under 11 U.S.C. § 507(a)(6).

The Teamster Trust motion did not allude to the $8,450.00 in unrefunded security deposits first acknowledged in Wise's opposition and cross-motion for summary judgment. Therefore, the court is also uncertain if the Teamster Trust has assignments of these claims.

### 7. DISCHARGEABILITY UNDER § 523(a)(4)—

■ 7.1. *The Wespac Security Deposits*—The Teamster Trust's nondischargeability argument is that Wise inherited a fiduciary responsibility under the URLTA in Alaska, AS 34.03.070 *et seq.* It seeks to establish nondischargeability under 11 U.S.C. § 523(a)(4) which provides:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

.   .   .   .   .

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ...

The Teamster Trust argues that by nonjudicially foreclosing on Wespac's interest in the apartment building, Wise stepped into the shoes of the landlord and became the "landlord" as defined in AS 34.03.-360(6). By stepping into these shoes, the Teamster Trust says Wise became a fiduciary with respect to the Wespac security deposits, even though they were not received by Wise.

■ A "fiduciary capacity" can be found on the basis of an express or statutory trust, *In re Baird,* 114 B.R. 198, 202 (9th Cir. BAP 1990), but determination of whether there is a fiduciary capacity involved is a "narrowly defined question of federal law" (although, the court can look to state law for guidance). *In re Short,* 818 F.2d 693, 695 (9th Cir.1987). A "defalcation" under § 523(a)(4) "is failure to account for money or property entrusted" to debtor which "includes innocent, as well as

intentional or negligent defaults so as to reach the conduct of fiduciaries who are short in their accounts." *Baird* at 204 and *In re Gonzalez,* 22 B.R. 58, 59 (9th Cir. BAP 1982).

Even if the Alaska URLTA creates a statutory trust, the Teamster Trust has not shown how Wise's actions could be characterized as "fraud or defalcation." No money was "entrusted" to Wise by Wespac or its tenants, nor did he defraud anyone of money since he did not receive it. *See 3 Collier on Bankruptcy* ¶ 523.14[1][a], [b] concerning the interpretation of "fraud" and "defalcation" under § 523(a)(4).

The Teamster Trust has failed to establish a right to summary judgment denying Wise's dischargeability under § 523(a)(4) of the Bankruptcy Code.

Wise, on the other hand, has established that he is entitled to summary judgment that any claim arising from the Wespac deposits is dischargeable under § 523(a)(4). The declaration of Timothy Cerny, Wise's operations manager, in opposition to the Teamster Trust's summary judgment claims Wise never received the security deposits from Wespac. Wise was only in possession after his foreclosure of Wespac's interest for about three or four months in 1987 before Nabalaska (the Teamster Trust's predecessor) foreclosed on Wise. Therefore, any claim arising from the Wespac security deposits are not nondischargeable under 11 U.S.C. § 523(a)(4).

■ 7.2. *The Wise Security Deposits*—Conversely, the failure to pay the $8,450.00 of security deposits Wise collected after the Wespac foreclosure qualifies for nondischargeability. AS 34.03.070 seems to be the type of statute which creates the statutory trust relationship called for by § 523(a)(4) to establish nondischargeability for a fiduciary for defalcation. *Baird* at 202 stated:

If state law creates an express or technical trust relationship between the debtor and another party and imposes trustee status upon the debtor, the debtor will be a fiduciary under section 523(a)(4). *Id.*

The statute must define the trust res, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt. *In re Weedman*, 65 B.R. 288, 291 (Bankr.W.D.Ky.1986); see, e.g., *In re Pedrazzini*, 644 F.2d 756 (9th Cir.1981).

8. *CONCLUSION*—The court will enter a partial summary judgment as indicated in § 1 at pages 2–3 of this memorandum. Counsel are requested to see if they can liquidate the claim arising out of the Wespac security deposits by negotiation. If they can, a form of judgment should be submitted by the parties. If they cannot settle on the amount, they should advise the court by October 19, 1990, and the matter will be set for trial.

## APPENDIX

Title 34. Property. Chapter 03. Uniform Residential Landlord and Tenant Act. Article 3. Landlord Obligations.

### Sec. 34.03.070. Security deposits and prepaid rent.

(a) A landlord may not demand or receive prepaid rent or a security deposit, however denominated, in an amount or value in excess of two months' periodic rent.

(b) Upon termination of the tenancy, property or money held by the landlord as prepaid rent or as a security deposit may be applied to the payment of accrued rent and the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with AS 34.03.120. "Damages" does not include wear resulting from ordinary use of the premises. The accrued rent and damages must be itemized by the landlord in a written notice mailed to the tenant's last known address within the time limit prescribed by (g) of this section, together with the amount due the tenant.

(c) All money paid to the landlord by the tenant as prepaid rent or as a security deposit in a lease or rental agreement shall be promptly deposited by the landlord, wherever practicable, in a trust account in a bank, savings and loan association, or licensed escrow agent, and the landlord shall provide to the tenant the terms and conditions under which the prepaid rent or security deposit or portions of them may be withheld by the landlord; nothing in this chapter prohibits the landlord from commingling prepaid rents and security deposits in a single financial account.

(d) If the landlord wilfully fails to comply with (b) of this section, the tenant may recover an amount not to exceed twice the actual amount withheld.

(e) This section does not preclude a landlord or tenant from recovering other damages to which either may be entitled under this chapter.

(f) The holder of the landlord's interest in the premises at the time of the termination of the tenancy is bound by this section.

(g) If the landlord or tenant gives notice that complies with AS 34.03.290, the landlord shall mail the written notice and refund required by (b) of this section within 14 days after the tenancy is terminated and possession is delivered by the tenant. If the tenant does not give notice that complies with AS 34.03.290, the landlord shall mail the written notice and refund required by (b) of this section within 30 days after the tenancy is terminated, possession is delivered by the tenant, or the landlord becomes aware that the dwelling unit is abandoned. If the landlord does not know the mailing address of the tenant, but knows or has reason to know how to contact the tenant to give the notice required by (b) of this section, the landlord shall make a reasonable effort to deliver the notice and refund to the tenant. (§ 1 ch 10 SLA 1974; am §§ 1, 2 ch 20 SLA 1982.)

### Sec. 34.03.110. Limitation of liability.

(a) Unless otherwise agreed, a landlord who conveys premises that include a dwelling unit subject to a rental agreement in a good faith sale to a bona fide purchaser is relieved of liability under the rental agreement and this chapter as to events occurring subsequent to written notice to the tenant of the conveyance. However, the landlord remains liable to the tenant for the property and money to which the tenant is entitled under AS 34.03.070, unless

the property and money are specifically assigned to and accepted by the purchaser.

(b) Unless otherwise agreed, a manager of premises that include a dwelling unit is relieved of liability under the rental agreement and this chapter as to events occurring after written notice to the tenant of the termination of the person's management. (§ 1 ch 10 SLA 1974.)

## MEMORANDUM DENYING MOTION FOR RECONSIDERATION

The defendant, debtor Dennis B. Wise, asked me to reconsider the Memorandum Regarding Cross Motions for Summary Judgment dated September 27, 1990.[1] Wise feels that I have overlooked the portion of § 507(a)(6) of the Bankruptcy Code (11 U.S.C. § 507(a)(6)) to which the emphasis has been added as follows:

> (6) Sixth, allowed unsecured claims of individuals, to the extent of $900 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, *that were not delivered or provided.*

My conclusion was that, when Nabalaska foreclosed, both Wise's ownership and the tenants' tenancy were terminated by the foreclosure statute. AS 34.20.

Upon termination of his ownership, Wise was bound by the Alaska Residential Landlord and Tenant Act to refund the security deposit unless he complied with the offset procedure and notice. Naturally he did not because he never received any deposits from Wespac. Although he did not even have the tenants' money, he was liable for their deposits under the statutory language of the Alaska Residential Landlord and Tenant Act.

The fallacy in Wise's reasoning is that *he* did not provide continued occupancy for the tenants after Nabalaska foreclosed. The Teamster Trust entered *new rental agreements* with the tenants. In lieu of collecting its own security deposits from the "new" tenants, the Teamster Trust took an assignment of the tenants' rights against Wise to a refund of their security deposit for which Wise was, by statute, liable. Wise could have used the same procedure when he foreclosed against Wespac without causing a mass exodus of tenants.

The cases cited by Wise to establish that security deposits should not be given priority under § 507(a)(6) are not persuasive. *In re Club Associates,* 107 B.R. 385, 408 (Bankr.N.D.Ga.1989) does not discuss the issue, but merely notes that the case involved no § 507(a)(6) claims. The conclusion in *In re Cimaglia,* 50 B.R. 9, 10 (Bankr.S.D.Fla.1985) that a noncommercial tenant's rent deposits does not fall within § 507(a)(6) is contrary to the plain wording of the statute.

---

1. There is no order yet, let alone a "final order," so the appeal time has not begun to run. It was the intent of the court that the parties provide the court with the figure for the rent deposits, if they can agree, and I would incorporate these into my order. See the "Conclusion" of my memorandum opinion.