Joseph GUARRACINO, Plaintiff,

v.

William T. HOFFMAN, Defendant.

No. CIV. A. 99–11593–WGY.

United States District Court,
D. Massachusetts.

March 17, 2000.

Gregory C. Howard, Boston, MA, for Joseph Guarracino, Appellant.

William H. Harris, Beverly, MA, for William T. Hoffman, Appellee.

Doreen B. Solomon, Boston, MA, Chapter 13 Trustee.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

### I. INTRODUCTION

This appeal raises a question of statutory interpretation that has yet to be addressed in this Circuit. Joseph Guarracino ("Guarracino") appeals the decision of the Massachusetts Bankruptcy Court that

the security deposit he provided to the debtor, William Hoffman ("Hoffman"), in connection with the lease of property, is not entitled to administrative priority under 11 U.S.C. § 507(a)(6). In addition, Guarracino claims that the objection to his proof of claim should have been denied because it was not timely filed as required by Local Rule 13–13.

## II. FACTUAL BACKGROUND

The underlying facts are as follows and are not in dispute. In September, 1994, Guarracino, along with three roommates, leased a home from Hoffman in Salem, Massachusetts, for a term of one year. Although the lease term was for one year, Guarracino understood that Hoffman was seeking to sell the house and if the house was sold, the premises would have to be vacated prior to the end of the lease term. On April 14, 1995, Hoffman accepted an offer to sell the premises with a closing date of June 15, 1995. Guarracino agreed to move by May 15, 1995.

As part of the lease agreement, Guarracino provided Hoffman with a $1300 security deposit. At the time the lease was terminated, however, Hoffman failed to return the deposit as required under Massachusetts law. As a result, in November, 1995, Guarracino brought suit against Hoffman for violation of Mass. Gen. Laws ch. 186 § 15B.[1] Pursuant to the statute, the state court entered judgment for three times the amount of the security deposit ($3900) plus interest from June 30, 1995, and attorney fees in the amount of $7800, for a total of $13,320.01.

A month after the judgment was rendered, Hoffman commenced his Chapter 13 proceedings. Guarracino filed a proof of claim in the amount of the state court judgment, which he contends is entitled to priority under 11 U.S.C. § 507(a)(6).[2] Hoffman objected to the claim, arguing that no part of the judgment qualifies as a priority claim; and that if priority is appropriate it may not exceed the lesser of the actual amount of the security deposit, in this case $1300, or the statutory cap of $1950. Accordingly, Hoffman filed a Chapter 13 plan that proposes to treat Guarracino's claim as entirely unsecured. Guarracino objected to the plan for its failure to treat his claim as a priority.

After a thoughtful analysis, the Bankruptcy Court determined that section 507(a)(6) did not encompass tenant security deposits. The court recognized that the "plain language" of the statute provides two equally plausible interpretations. A subsequent review of the legislative history provided no aid in discerning Congress' intent. Because administrative priority provisions are to be construed narrowly and absent clear evidence to the contrary, the Bankruptcy Court declined to include tenant security deposits within section 507(a)(6).

## III. RELEVANT LEGAL STANDARD

A district court's standard of review when deciding an appeal from a bankruptcy court is governed by Fed. R. Bankr.P. 8013. The rule provides that the court "may affirm, modify or reverse a bankruptcy judge's judgment, order or decree or remand with instructions for further proceedings." While a district court must review conclusions of law *de novo, In re First Software Corp.*, 97 B.R. 711, 713 (D.Mass.1988) (Wolf, J.), "[f]indings of fact ... shall not be set aside unless clearly

---

**1.** Mass. Gen. Laws ch. 186, § 15B(3)(b) requires the lessor to return the security deposit, less any deductions for damages, within 30 days of termination of the lease.

**2.** 11 U.S.C. § 507(a)(6) gives administrative priority to:

"allowed unsecured claims of individuals, to the extent of $1950 for each individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family or household use of such individuals, that were not delivered or provided."

erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr.P. 8013.

## IV. ANALYSIS

As already noted, whether non-commercial tenant security deposits receive administrative priority under the Bankruptcy Code has not been addressed by this Circuit. With no controlling precedent to direct the inquiry, the Court must first examine the plain language of the statute. *See United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). If the language is clear and unambiguous, the inquiry ends here. If, however, the language provides no obvious answer, as is often the case, the Court can attempt to glean congressional intent from the legislative history.

### A. Plain Meaning.

Section 507(a)(6) of Title 11 of the United States Code states as follows:

(a) The following expenses and claims have priority in the following order:

. . . .

(6) Sixth, allowed unsecured claims of individuals, to the extent of $1,950 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided.

At the outset, the Bankruptcy Court considered whether the language of the statute encompassed security deposits at all or whether it was limited to purchase-money deposits. The court concluded that it was not Congress' intent to limit section 507(a)(6) to purchase-money deposits. It reasoned that by using the phrase "in connection with" instead of the word "for" before the phrase "purchase, lease or rental" Congress intended to include more than just purchase-money deposits. This Court agrees with the Bankruptcy Court's analysis and rules that security deposits are within the statute.

This determination does not end the investigation, however. While security deposits fit within the statute, it is not clear under what circumstances the deposits are given administrative priority. Given the stance of the parties, it is fairly obvious from the outset that the statute provides at least two possible scenarios. The Court's task would be easier if it could dismiss as specious either Guaraccino's claim that the statute includes security deposits under all circumstances or Hoffman's contention that it is limited to situations in which the tenant never took possession of the premises. Unfortunately, the precise meaning of the statute is not evident.

As noted by the Bankruptcy Court, the confusion emanates from the last clause; "that were not delivered or provided." One interpretation is that the clause modifies the "purchase, lease, or rental of property" *and* "the purchase of services." If this were the case, security deposits would be a priority claim *only if* the tenant had not taken possession of the property or alternatively if the lease had been terminated prematurely. Another, equally plausible, interpretation is that the last clause modifies only "the purchase of services." Read this way, the language of the statute would encompass the claims of security deposit creditors whether or not the tenant possessed the property.

Other courts faced with this grammatical conundrum have concluded that the plain meaning of the statute includes tenant security deposits. *See In re Duval Manor Assocs.*, No. 95–11844 SR, 1997 Bankr.LEXIS 350 at *15 (Bankr. E.D.Penn. March 27, 1997); *In re Dennis B. Wise*, 120 B.R. 537, 545 (Bankr.D.Alaska 1990) (ruling plain meaning of the statute encompasses non-commercial tenant's security deposits); *In re Morina Romanus*, No. 97–25462 JFK 1998 Bankr.LEX-

IS at *6 (Bankr.W.D. Penn. April 3, 1998) (concluding statute includes security deposits); *In re River Village Assocs.,* 161 B.R. 127, 134 (Bankr.E.D.Pa.1993) (same).[3] *But see In re Cimaglia,* 50 B.R. 9, 10 (Bankr.S.D.Fla.1985) (ruling that section 507[a][6] does not include tenant security deposits). The court in *Duval Manor* rejected a restrictive interpretation of the statute because it "reads a rather curious window of protection into the statute," namely, security deposits would have administrative priority only when possession had not been delivered. 1999 Bankr.LEXIS 350 at *16. Moreover, the court reasoned that "an ungrammatical result" would occur if the plural form of the verb to be—"were," found in the last clause— was applied to a singular noun—"property."

While this Court agrees that a curious anomaly is created if the clause "that were not delivered or provided" is applied to property, it is not so clear that the "plain meaning" of the statute dictates the outcome. If this were the case, the grammatical gymnastics employed in *Duval Manor* would be unnecessary. A review of the legislative history, however, buoys the outcome.

### B. Legislative History.

Contrary to the Bankruptcy Court's opinion that the legislative history "offers no guidance," this Court finds that the legislative history evidences a fairly clear congressional intent. The current sixth priority had no predecessor provision in the Bankruptcy Act. It was included in the

Bankruptcy Code in response to the W.T. Grant bankruptcy. Grant was a retailer who issued "scrip" to customers to use for future purchases. The customer essentially made a deposit or an advance on merchandise to be redeemed later. When Grant filed for bankruptcy, consumers with scrip were reduced to general unsecured creditors.

■ Congress recognized the unfairness of this result and sought to correct the inherent power imbalance between the consumer and the retailer. In describing this scenario, the House Report stated:

> Though he assumed his deposit was tantamount to a trust fund, he gets nothing from the estate of the debtor, because the assets available provide little return to the unsecured creditors. Because of his ignorance and his inability to bargain with the retail merchant, he is unable to do a credit investigation or obtain special terms from the merchant, as a true creditor may do.

H.R.Rep. No. 595, 95th Cong. 1st Sess. 188 (1977). This excerpt suggests that it was the intent of Congress to protect unsuspecting individuals, who deposit money into what is "tantamount to a trust fund," from the harsh realities of the bankruptcy system.

Including security deposits as an administrative priority naturally follows from congressional concern for protecting those generally in an inferior bargaining position. The unequal bargaining power found in the consumer-retailer relationship, is amplified in the non-commercial tenant-

---

**3.** Hoffman attempts to distinguish the *Wise* and *River Village* decisions by pointing out that in both instances the landlord had prematurely terminated the lease, thus the property was not delivered or provided. In *Wise,* the apartment property was foreclosed and Teamster Trust entered into new lease agreements with the tenants. *See* 120 B.R. at 545. Arguably, the court's conclusion rested on the fact that Wise did not provide "continued occupancy." *See id.* There is no such ambiguity in the *River Village* opinion, however. The court explicitly rejected a construction of

the statute that would protect tenants only if the landlord "filed bankruptcy between the time the security deposit was paid and the time the tenant got possession of the rental premises." 161 B.R. at 133.

In any event, the facts of this case could be read to suggest that Hoffman also terminated the lease prematurely. The lease term was for one year, yet Guaraccino was asked to vacate the premises nearly 4 months before the end of the term. Like the *Wise* debtor, Hoffman did not provide "continued occupancy."

landlord context. A potential tenant has no choice but to surrender a security deposit to obtain housing. In addition, while the consumer deposits money towards the purchase of a product or service, the tenant's security deposit is solely for the protection of the landlord.

Moreover, the security deposit is more than "tantamount to a trust"—it *is* a trust. *See* Mass. Gen. Laws ch. 186, § 15B; *In re Christian,* 172 B.R. 490, 497 (Bankr. D.Mass.1994) (ruling that Mass. Gen. Laws ch. 186, § 15B creates a trust and fiduciary duties for the landlord).[4] Barring damage to the premises, a tenant has the right to expect the full amount of her security deposit plus interest returned to her within 30 days after termination of the lease. *See* Mass. Gen. Laws ch. 186, § 15B(2)(a). Further, the lessor is required to keep the security deposit in a separate, interest bearing account protected from the reach of creditors. *See* Mass. Gen. Laws ch. 186, § 15B(3)(a).[5]

It is hard to imagine a more compelling scenario. An individual tenant is not a business creditor who understands the risks of extending unsecured credit. The security deposit is not the outcome of a voluntary prepetition transaction, it is a prerequisite to housing. *See Christian,* 172 B.R. at 498 (recognizing that lessor-residential tenant relationship is very seldomly "a relation at arm's length between equals"). Nor is the residential tenant a large commercial tenant who is able to negotiate a better deal. An individual tenant, like the victims of the Grant bankruptcy, "is [ ] left holding the bag" once a landlord declares bankruptcy. *See* H.R.Rep. No. 595, 95th Cong. 1st Sess. 188 (1977).

 Given that non-commercial tenant security deposits are within the scope of the statute and legislative history evidences Congress' intent to protect a consumer's money held in trust, it follows that the $1300 security deposit should be given administrative priority.

 There is, however, nothing in section 507(a)(6) that suggests that state law damages stemming from mishandling of security deposits ought receive administrative priority. Thus, the remainder of the state court judgment remains a general unsecured claim. *See In re Hemingway Transport,* 954 F.2d 1, 5 (1st Cir.1992) (expense not entitled under the Code should not be given administrative priority).

Accordingly, the decision of the Bankruptcy Court is REVERSED and the case is remanded for further proceedings in accordance with this opinion.

---

**4.** Interestingly, *Christian* held that violation of the fiduciary relationship created by Mass. Gen. Laws ch. 186, § 15B was a non-dischargeable debt under section 523(a)(4). The court found not only the security deposit non-dischargeable but the state court award of punitive damage as well.

**5.** The Massachusetts legislature attempted to avoid this very dilemma by declaring that "a security deposit will continue to be the property of the tenant making such a deposit, shall not be commingled with the assets of the lessor, and shall not be subject to the claims of any creditor of the lessor ... including ... a trustee in bankruptcy...." Mass. Gen. Laws ch. 186, § 15B(1)(e).