PHILIP SHWACHMAN, trustee, *vs.* JOSEPH KHOROSHANSKY. April 29, 1983. The tenant, Khoroshansky, appeals from a judgment determining that he owed the plaintiff (landlord) $2,600, representing rent due the landlord after certain deductions. (As the back rent was not paid, the landlord was later given a judgment for possession and an execution.)

1. The principle issue concerns the applicability of the security deposit law, G. L. c. 186, § 15B, to a lease which was, as found by the judge, "primarily commercial." The building in question was partly commercial and partly residential. Khoroshansky and a business colleague, one Gurezich, signed a lease for a first floor suite on February 18, 1980. The suite, which had consisted of two adjacent residential apartments until 1977, had been combined and renovated by the landlord and used as his rental offices until Khoroshansky and Gurezich took it over on March 3, 1980. The lease was a "Standard Form Commercial Lease" and provided that the lessees "shall use the leased premises only for the purpose of general office use primarily associated with a marriage broker or dating service use or other office or commercial use approved in writing by the lessor." The marriage broker and dating service run by Khoroshansky and Gurezich was Zodiac, Inc., and the nature of that business, as found by the judge, "required that someone be available to answer the telephone on a twenty-four hour basis." For that reason the lease incorporated a rider, which provided that "[i]f the lessees shall use all or part of the leased premises for residential use they shall be subject to the requirements, conditions and obligations contained in the [l]essor's standard residential lease, a copy of which is attached hereto and made a part hereof" but was not filled out or executed. The rider also required the landlord to "install a kitchen in what is presently a file room . . . to consist of kitchen cabinets, sink, stove and refrigerator." The rent was paid by Zodiac, Inc., checks until payments stopped in January, 1981. The landlord took a security deposit equal to a month and a half's rent and did not segregate the deposit as would be required by § 15B if applicable. Khoroshansky contends that the provisions of § 15B apply to all leases, residential and commercial, and that in any event they applied to this lease because it permitted residential use of the premises. The former contention is clearly incorrect: the elaborately drafted text of the section indicates by repeated references that the draftsmen were thinking in terms of residential applicability (St. 1977, c. 979, which inserted § 15B in roughly its present form, was entitled "An act regulating security deposits for residential real property"), and any attempt to differentiate those clauses or subclauses which are not expressly restricted to residential leases from those which are and to apply the former to commercial leases would destroy the unity of the statutory scheme and produce incongruous results. Compare *Casasanta* v. *Zoning Bd. of Appeals of Milford,* 377 Mass. 67, 72-73 (1979); *Shalbey* v. *Board of Appeal of Norwood,* 6 Mass. App. Ct. 521, 526 (1978). The purpose of § 15B is to assist "tenants in residential

property who, as a practical matter, are generally in inferior bargaining positions and find traditional avenues of redress relatively useless; i.e., the legal expense of chasing a security deposit would be more than the amount of the deposit." *Hampshire Village Associates* v. *District Court of Hampshire,* 381 Mass. 148, 152-153 (1980), quoting from *Goes* v. *Feldman,* 8 Mass. App. Ct. 84, 91 (1979). The judge's finding that this lease was primarily commercial (and only incidentally residential) was not clearly erroneous, and we think he ruled correctly that the statute as drafted was not intended to apply to commercial leases by the terms of which an employee may live on the premises to provide twenty-four hour coverage. If the security deposit law is to be extended to cover leases which are primarily commercial in nature, it should be done by explicit legislative action which will give fair warning to landlords.

2. Assuming, without deciding, that the provisions of G. L. c. 186, § 14, apply to the lease here in issue, the judge did not err in finding no violation. The lease was signed February 18, 1980, and, although the lease term was to commence March 1, the rider expressly contemplated that there might be a delay of up to thirty days in installing the kitchen. In fact the kitchen was completed by March 6 except for one cabinet. Khoroshansky and Gurezich took possession March 3, the landlord having been delayed three days in moving to another office across the hall because the tenant of that office himself was delayed in moving out. The parties made an adjustment in the first month's rent to compensate for the delays. A variety of minor problems arose in the course of the tenancy (leaky radiator, cockroaches, and the like) which the landlord dealt with promptly and for which the judge ordered a partial rent abatement, see *Berman & Sons,* v. *Jefferson,* 379 Mass. 196 (1979), but declined to find liability under § 14. There was no error in the latter ruling. The judge on the facts found was not required to find that the landlord's behavior was reckless, as in *Simon* v. *Solomon,* 385 Mass. 91, 99-104 (1982), or intentional within the meaning of § 14, as in *Lowery* v. *Robinson,* 13 Mass. App. Ct. 982 (1982) (where liability was based on the landlord's intentional act of allowing heat to lapse in the wintertime on the excuse that he couldn't afford to pay for the heating oil).

3. The other points briefed are without merit. The claim under G. L. c. 93A is expressly made contingent on a finding of violation under G. L. c. 186, § 14 or § 15B. The trial judge was not required to take judicial notice of the Boston rent control ordinance. Liacos, Massachusetts Evidence 23 (5th ed. 1981).

*Judgment affirmed.*

*James A. Frieden* for the defendant.
*Daniel Briansky* for the plaintiff.