DAVID J. CASTENHOLZ *vs*. MARY CAIRA & another.[1]

Suffolk. February 15, 1985. — March 28, 1986.

Present: ARMSTRONG, KASS, & FINE, JJ.

*Landlord and Tenant,* Security deposit, Multiple damages, Attorney's fees.

Where landlords failed to place a tenant's security deposit in an escrow account within thirty days of receipt, as required by G. L. c. 186, § 15B (3) (*a*); where, after selling the property in question to a new owner and transferring the security deposit to him, neither the landlords nor the new owner complied with the requirements of § 15B (5); and where the original landlords failed to return the security deposit to the tenant in accordance with § 15B (6) (*a*), forcing the tenant to resort to litigation, the original landlords were liable to the tenant, who had remained in possession of the premises, for treble damages, interest, costs, and attorney's fees in accordance with § 15B (7). [763-764]

CIVIL ACTION commenced in the City of Boston Division of the Housing Court Department on January 18, 1984.

The case was reported to the Appeals Court by *Patrick J. King,* J.

*James A. Scanlon* for the defendants.
*Kurt M. Pressman* for the plaintiff.

ARMSTRONG, J. The plaintiff sued the Cairas, his former landlords, seeking damages under G. L. c. 186, § 15B (7), as appearing in St. 1978, c. 553, § 2,[2] equal to three times the amount of his $400 security deposit, and an attorney's fee, for

---

[1] Emilio Caira.

[2] This action was commenced in 1984 (at which time the security deposit had not been returned to the tenant) prior to the effective date of the amendments to § 15B effected by St. 1983, c. 645. The principles applicable to the case would not be altered by the 1983 amendment or by St. 1984, c. 170, § 2A, which retroactively restored § 15B (5), which is involved in the present case, to the form it had prior to the 1983 amendments. Section 15B was also amended by St. 1981, c. 92, which added § 15B (9), not involved in the present case.

the Cairas' failure to place the deposit in a separate escrow account within thirty days of receipt, as required by § 15B (3) (*a*). The Cairas did not pay or offer to pay interest to the plaintiff on the security deposit. Fourteen months after receiving the deposit, the Cairas sold the real estate to a new owner and transferred to him the security deposit together with the accrued interest. Neither the Cairas nor the new owner gave the plaintiff the notification required by § 15B (5). Two months later the plaintiff brought this action. He continued to occupy the premises, both then and at the time of trial.

After finding the foregoing facts and noting a possible conflict between provisions of § 15B (3) (*a*), entitling the plaintiff to a return of the deposit, and § 15B (7), seemingly entitling him to thrice that amount, the judge reported the case to this court for determination of the following question: "Is a landlord who accepts a security deposit and fails to comply with the deposit requirements of G. L. c. 186, § 15B (3) (*a*), liable to the tenant, who remains in possession of the leased premises, for three (3) times the amount of the security deposit plus interest pursuant to G. L. c. 186, § 15B (7), or is said landlord merely liable for the return of the security deposit pursuant to G. L. c. 186, § 15B (3) (*a*)."

In considering the relationship between the subsection (3) (*a*) remedy and that of subsection (7), neither of the parties nor, by implication, the judge has taken the position that the remedies are cumulative: i.e., that the tenant could be entitled both to the return of the deposit and, in addition, to the treble-damages remedy. Without express guidance in the statute, courts are reluctant to infer a legislative intention to permit such a cumulation of remedies. *McGrath* v. *Mishara,* 386 Mass. 74, 84-85 (1982).

The treble damage provisions of § 15B (7) apply with intentional severity to "conduct that [the Legislature regarded] as particularly reprehensible." *Hampshire Village Associates* v. *District Court of Hampshire,* 381 Mass. 148, 153, cert. denied sub nom. *Ruhlander* v. *District Court of Hampshire,* 449 U.S. 1062 (1980), quoting from *Lindsey* v. *Normet,* 405 U.S. 56, 78 (1972). Suggestions that the literal language of subsection

(7) might be moderated where a landlord may have committed a technical violation but was acting in good faith, *McGrath* v. *Mishara,* 386 Mass. at 80, were rejected in *Mellor* v. *Berman,* 390 Mass. 275, 280-283 (1983). Thus, it also seems improbable, in the absence of express language to that effect in § 15B, that the treble damage remedy would be ruled unavailable to a tenant who remains in possession, unless it proved impossible to reconcile the remedial provisions of subsection (3) (*a*) and subsection (7) without implying such a limitation.

The relevant portions of subsection (3) (*a*) state that "[a]ny security deposit received by the [the landlord] shall be held in a separate, interest-bearing account in a bank . . . . A receipt shall be given to the tenant within thirty days after such deposit is received by the [landlord] which receipt shall indicate . . . the bank . . . the amount and account number of said deposit. Failure to comply with this paragraph [i.e., par. (*a*)] shall entitle the tenant to immediate return of the security deposit." Subsection (3) (*a*) thus imposes two duties on the landlord: first, to establish the escrow account, and, second, to furnish the tenant with a conforming receipt, both within a thirty-day period measured from receipt of the security deposit. Failure to conform with either duty represents a failure to comply with the paragraph and thus entitles the tenant to "immediate return of the security deposit."

Subsection (7) does not directly tie into the duties established by subsection (3) (*a*). Rather, subsection (7) states: "If the [landlord] fails to comply with clauses (*a*), (*d*), or (*e*) of subsection (6), the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees." Subsection (6) declares that the landlord "shall forfeit his right to retain any portion of the security deposit" if he fails to comply with certain, specified duties imposed on him by other subsections of § 15B. The relevant clause for purposes of this case is (*a*): "fails to deposit such funds in an account as required by subsection (3)."

Subsection (6), set out in the margin,[3] lists several violations of the security deposit law which are deemed sufficiently serious to result in the landlord's forfeiting the right to retain the the security deposit for any purpose.[4] Three of these — (*a*),

---

[3] The subsection, unamended since St. 1978, c. 553, § 2, reads:

"(6) The lessor shall forfeit his right to retain any portion of the security deposit for any reason, or, in any action by a tenant to recover a security deposit, to counterclaim for any damage to the premises if he:

"(*a*) fails to deposit such funds in an account as required by subsection (3);

"(*b*) fails to furnish to the tenant within thirty days after the termination of the occupancy the itemized list of damages, if any, in compliance with the provisions of this section;

"(*c*) uses in any lease signed by the tenant any provision which conflicts with any provision of this section and attempts to enforce such provision or attempts to obtain from the tenant or prospective tenant a waiver of any provision of this section;

"(*d*) fails to transfer such security deposit to his successor in interest or to otherwise comply with the provisions of subsection (5) after he has succeeded to an interest in residential real property; or,

"(*e*) fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in acordance with the provisions of this section, together with any interest thereon, within thirty days after termination of the tenancy."

[4] A construction that avoids any redundancy between subsection (6) (*a*) and the last sentence of subsection (3) (*a*) does not seem possible. To say that the landlord "forfeit[s] his right to retain . . . the security deposit" (subsection [6]) is the same as to say that "the tenant [is entitled] to immediate return of the security deposit" (subsection [3] [*a*]). There is no similar redundancy with respect to pars. (*b*), (*c*), (*d*), or (*e*). Possibly the draftsman simply intended, for convenience sake, to group in subsection (6) all violations which would result in the landlord's losing the right to hold the deposit. More likely, there was a reason to retain the last sentence of subsection (3) (*a*): The forfeiture under subsection (3) (*a*) may be broader than that under subsection (6) in that both mandate forfeiture if the landlord fails to establish the separate account, but subsection (3) (*a*) goes further to mandate forfeiture where the landlord's sole transgression lies in failing to give the tenant a conforming receipt within the specified time. By inference the latter could be regarded less seriously than a failure to establish the separate account itself and be thought not to justify potential exposure to the more sweeping penalty provisions of subsection (7) — exposure that would result from incorporating in subsection (6) (*a*) both of the duties imposed on the landlord by subsection (3) (*a*).

(*d*), and (*e*) — involve a failure by the landlord to comply with his duties in handling the tenant's security deposit money. Paragraph (*a*) is a failure to deposit it in a separate bank account, as required by subsection (3) (*a*); par. (*d*) involves a failure to transfer the security deposit money to the landlord's successor in interest when he transfers title to the premises, as required by subsection (5); and par. (*e*) involves a failure to return the deposit, or so much thereof as the tenant may be entitled to, to the tenant at the termination of the tenancy, as required by subsection (4). These breaches in the handling of the deposit expose the landlord, under subsection (7), to the potential of a treble damage recovery, together with interest, costs, and attorney's fees. *Hampshire Village Associates* v. *District Court of Hampshire,* 381 Mass. at 152. *Jason* v. *Jacobson,* 387 Mass. 21, 21 n.2 (1982). *Mellor* v. *Berman,* 390 Mass. at 279 & n.7. The two remaining violations set out in subsection (6), (*b*) and (*c*), do not involve mishandling of the tenant's deposit money and do not expose the landlord to the possibility of treble damages but only entitle the tenant to a return of the deposit.

Subsection (7) imposes the treble damages penalty not for a violation of subsection (3) (*a*), but for a violation of subsection (6) (*a*). Subsection (3) (*a*) establishes the duty to place the security deposit in an escrow account. Subsection (6) (*a*) declares a forfeiture of the landlord's right to retain the security deposit if he has failed to comply with the specified duty imposed on him by subsection (3) (*a*). The forfeiture of the right to retain the deposit means that the landlord is under a duty to return the deposit to the tenant on demand. A violation of subsection (6) (*a*) occurs if the landlord fails to return the deposit when requested. In that event the treble damages provisions of subsection (7) come into play.

Section 15B, as thus construed, is not a minefield of potential multiple penalties for a landlord who makes an innocent mistake. Any one of the violations of duty listed in subsection (6) will entitle the tenant to immediate return of his entire deposit on request, regardless of whether the violation was innocent or wilful. *Mellor* v. *Berman,* 390 Mass. at 281-283. If the

landlord refuses to acknowledge his error and return the deposit, thus forcing the tenant to employ legal process to vindicate his rights, the landlord will be liable for treble damages, interest, costs, and attorney's fees. The purpose of subsection (7) is not to pillory the landlord, but to make resort to litigation feasible for the tenants. Without subsection (7), normally "the legal expense of chasing a security deposit would be more than the amount of the deposit." *Hampshire Village Associates* v. *District Court of Hampshire,* 381 Mass. at 153, and *Mellor* v. *Berman,* 390 Mass. at 282, both quoting from *Goes* v. *Feldman,* 8 Mass. App. Ct. 84, 91 (1979). Where the landlord discovers or acknowledges his error and returns the deposit, and the tenant is not forced to resort to litigation to vindicate his rights, the multiple damages and attorney's fees provisions of subsection (7) have no application. As thus understood, the purpose of § 15B is seen not to be arbitrarily penal; rather, "the underlying goal [is to establish] an 'equitable relationship' " between tenants and landlords. *McGrath* v. *Mishara,* 386 Mass. at 85.

We thus see no inconsistency between the provisions of subsections (3) (*a*) and (6) (*a*), on the one hand, both calling for a return of the deposit, and subsection (7) on the other, calling for treble damages and attorney's fees. The former envision compliance by the landlord without the necessity for litigation. The latter envisions making the remedy by litigation financially feasible, and thus efficacious, where the landlord refuses to return the deposit on demand after failing to establish the separate account within thirty days.

The application of these principles to this case is as follows. By failing to place the plaintiff's security deposit in a separate account within thirty days after receiving it, the Cairas became obligated, both under the final sentence of § 15B (3) (*a*) and under § 15B (6) (*a*), to return the deposit to the plaintiff on demand. By the express terms of the second paragraph of sebsection (5),[5] the Cairas remained so obligated even after

---

[5] Subsection (5) relates to a transfer of the premises to a new owner. The first paragraph requires the original landlord to transfer the security deposit

the transfer of the security deposit to the owner, there having been no compliance with any of the relieving provisions ([*a*], [*b*], or [*c*]) of that subsection. The judge's findings do not indicate whether the plaintiff sought a return of his deposit prior to bringing this action; but the commencement of the action itself would, in accordance with contract law, operate as a demand. *Farmers Natl. Bank* v. *Venner,* 192 Mass. 531, 535 (1906). *Cormier* v. *Brock,* 212 Mass. 292, 295 (1912). *Geffen* v. *Paletz,* 312 Mass. 48, 49 (1942). 3A Corbin, Contracts § 643, at 76-77 (1960). Cf. *Warren* v. *Ball,* 341 Mass. 350, 354 (1960); *Teletransmissions, Inc.* v. *David,* 5 Mass. App. Ct. 864, 864-865 (1977). There is no finding of a tender promptly thereafter; rather, it has been the Cairas' position that the tenant must seek a return of the deposit from the new owner.[6] Therefore, there has been a violation of subsection (6) (*a*), and the Cairas, despite having transferred the security deposit to their successor, are liable to the tenant for treble damages, interest, costs and attorney's fees, in accordance with the provisions of subsection (7).

The case is remanded to the Housing Court for the entry of judgment in accordance with the foregoing opinion. Following

---

to the new owner and requires the new owner to notify the tenant of the transfer of the deposit within forty-five days thereafter. The second paragraph reads:

"Upon such transfer, the lessor or his agent shall continue to be liable with respect to the provisions of this section [i.e., § 15B] until:

(*a*) there has been a transfer of the amount of the security deposit so held to the lessor's successor in interest and the tenant has been notified in writing of the transfer and of the successor in interest's name, business address, and business telephone number;

(*b*) there has been compliance with this clause by the successor in interest; or

(*c*) the security deposit has been returned to the tenant."

[6] Because the new owner is not a party to this litigation, we do not decide what rights an original landlord might have against a new owner, upon either returning the security deposit to a tenant or paying treble damages to the tenant.

the principle applied in *Mellor* v. *Berman,* 390 Mass. at 284, we decline to assess appellate attorney's fees or costs.

*So ordered.*