In re George C. CHRISTIAN and Marilyn A. Christian, Debtors.

**Elizabeth BRIXIUS and Jeffrey Butler, Plaintiffs,**

v.

**George C. CHRISTIAN, Defendant.**

**Bankruptcy No. 93–41967–HJB.**

United States Bankruptcy Court, D. Massachusetts.

Sept. 30, 1994.

G. DeVon Bascomb, Hadley, MA.

Kathleen N. Finamore, Northampton, MA.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

## I. INTRODUCTION

Before the Court is a motion for summary judgment filed by Plaintiffs, Elizabeth Brixius ("Brixius") and Jeffrey Butler ("Butler") (collectively, the "Plaintiffs") against the Defendant, George C. Christian (the "Defendant" or "Debtor") on a complaint to determine the nondischargeability of a debt under 11 U.S.C. § 523(a)(4).

### A. Factual Background

The material facts are not disputed. Brixius and a former tenant, Robin Regan ("Regan"), jointly leased an apartment located at 69 Prospect Street, Unit 42, Northampton,

Massachusetts (the "Apartment") from Prospect Realty ("Prospect") (a business trade name pursuant to which the Debtor conducted business) for the period of May 1, 1989 through May 31, 1990. The monthly rent was set at $575.00. Pursuant to the terms of the lease, Brixius and Regan paid to Prospect the first and last month's rent as well as a security deposit equal to one month's rental. Neither at the inception of the lease term nor at any time during the course of the tenancy did Prospect provide Brixius, Regan or Butler a writing indicating the location or the number of the bank account holding the security deposit or the last month's rent.

On or about August 31, 1989, with the knowledge and consent of Prospect, Butler replaced Regan on the lease. The Plaintiffs executed a written lease renewal for a term of 15 months which extended the lease term through August 31, 1991. The "Lease Extension Agreement"[1] also provided that "all terms and conditions [would] remain the same except that rent for the renewal period [would be increased to] $595.00." At the end of the lease term, the Plaintiffs vacated the Apartment. However, Prospect failed to return the security deposit or pay the Plaintiffs the required interest on the security deposit or interest on the last month's rent. Prospect also failed to provide to the Plaintiffs, within 30 days of the termination of the tenancy, an itemized list of damages, necessary repairs and cost of repairs to the premises arising out of the tenancy.

In response to the aforesaid failures by Prospect to make payment, the Plaintiffs filed a three count complaint against Prospect and the Debtor in the Commonwealth of Massachusetts District Court, Northhampton Division, Civil No. 9245 CV 383, seeking relief pursuant to Mass.Gen.Laws Ann. ch. 186, § 15B[2] and Mass.Gen.Laws Ann. ch. 93A,

---

1. See Exhibit "K" of Plaintiff's Motion for Summary Judgment.

2. The statute (before it was amended in 1992) provides in relevant part:

(2)(a) Any lessor or his agent who receives, at or prior to the commencement of a tenancy, rent in advance for the last month of the tenancy from a tenant ... shall give to such tenant ... at the time of such advance payment a receipt indicating the amount of such rent, the date on which it was received, its intended application as rent for the last month of the tenancy, the name of the person receiving it ... and a statement indicating that the tenant is entitled to interest on said rent payment at the rate of five per cent per year....
Any lessor who receives said rent in advance for the last month of the tenancy shall, beginning with the first day of the tenancy, pay interest at the rate of five per cent per year.... At the end of each year of the tenancy, such lessor shall give or send to the tenant from whom rent in advance was collected a statement which shall indicate the amount payable by such lessor to the tenant. The lessor shall at the same time give or send to such tenant the interest which is due or shall notify the tenant that he may deduct the interest from the next rental payment of such tenant....
If the lessor fails to pay any interest to which the tenant is then entitled within thirty days after the termination of the tenancy, the tenant upon proof of the same in an action against the lessor shall be awarded damages in an amount equal to three times the amount of interest to which the tenant is entitled, together with court costs and reasonable attorney fees.

(b) Any lessor or his agent who receives a security deposit from a tenant ... shall give said tenant ... at the time of receiving such security deposit a receipt indicating the amount of the security deposit, the name of the person receiving it and, in the case of an agent, the name of the lessor for whom the security deposit is received, the date on which it is received, and a description of the premises leased or rented. Said receipt shall be signed by the person receiving the security deposit.
(c) Any lessor of residential real property, or his agent, who accepts a security deposit from a tenant .. shall, upon receipt of such security deposit, or within ten days after the commencement of the tenancy ... furnish to such tenant ... a separate written statement of the present condition of the premises to be leased or rented....
(d) Every lessor who accepts a security deposit shall maintain a record of all such security deposits received.... Said record shall be available for inspection upon request of a tenant....
(3)(a) Any security deposit received by such lessor shall be held in a separate interest bearing account.... A receipt shall be given to the tenant within thirty days after such deposit is received by the lessor which receipt shall indicate the name and location of the bank in which the security deposit has been deposited and the amount and account number of said deposit. Failure to comply with this paragraph shall entitle the tenant to immediate return of the security deposit.
(b) A lessor of residential real property who holds a security deposit pursuant to this section for a period of one year or longer from the commencement of the term of the tenancy

§ 9.[3] Count I sought an award of three times the amount of the security deposit plus interest, costs and attorneys fees, pursuant to ch. 186, § 15B(2), (3), (4) and (7). Count II sought an award of interest on the last month's rent, pursuant to ch. 186, § 15B(2). Count III sought an award of three times the security deposit plus interest, costs and attorneys fees, pursuant to Mass.Gen.Laws Ann. ch. 93A, § 9[4]. On January 19, 1993,

shall, beginning with the first day of the tenancy, pay interest at the rate of five percent per year, payable to the tenant at the end of each year of the tenancy.... At the end of each year of a tenancy, such lessor shall give or send to the tenant from whom a security deposit has been received a statement which shall indicate the name and address of the bank in which the security deposit has been placed, the amount of the deposit, the account number, and the amount of interest payable by such lessor to the tenant....

(4) The lesser shall, within 30 days after ... the end of the tenancy ... return to the tenancy as specified in a valid lease agreement, return to the tenant the security deposit or any balance thereof; provided, however that the lessor may deduct from such security deposit for the following:

(i) any unpaid rent ...

(ii) any unpaid increase in real estate taxes ...

(iii) a reasonable amount necessary to repair any damage caused to the dwelling unit by tenant or person under tenant's control..... In the case of such damage, the lessor shall provide to the tenant within such thirty days an itemized list of damages....

(6) The lessor shall forfeit his right to retain any portion of the security deposit for any reason or, in any action by a tenant to recover a security deposit, to counterclaim for any damage if he:

(a) fails to deposit such funds in an account as required by subsection (3);

(b) fails to furnish the tenant within thirty days after the termination of the occupancy the itemized list of damages, if any, in compliance with the provisions of this section;

. . . . .

(e) fails to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting therefrom any sums in accordance with the provisions of this section, together with any interest thereon, within thirty days after termination of the tenancy.

(7) If the lessor or his agent fails to comply with clauses (a), (d), or (e) of subsection 6, the tenant shall be awarded damages in an amount equal to three times the amount of such security deposit or balance thereof to which the tenant is entitled plus interest at the rate of five per cent from the date when such payment became due, together with court costs and reasonable attorney's fees.

Mass.Gen.Laws Ann., ch. 186 § 15B(2)(a)–(d), (3)(a)–(b), (4), (6(a)–(b), (e), (7) (West 1991).

3. Chapter 93A, § 9 provides that "[a]ny person ... who has been injured by another person's use or employment of any method, act or practice declared unlawful by section two or any rule or regulation issued thereunder ... may bring an action." Mass.Gen.Laws Ann. ch. 93A, § 9(1) (West 1984). Chapter 93A, § 2 provides:

(a) Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

(b) It is the intent of the legislature that in construing paragraph (a) of this section in actions brought under sections four, nine and eleven, the court will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to section 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended.

(c) The attorney general may make rules and regulations interpreting the provisions of subsection 2(A) of this chapter. Such rules and regulations shall not be inconsistent with the rules and regulations and decisions of the Federal Trade Commission and the Federal Courts interpreting the provisions of 15 U.S.C. 45(a)(1) (The Federal Trade Commission Act), as from time to time amended.

Mass.Gen.Laws Ann. ch. 93A, § 2 (West 1984).

4. Chapter 93A, § 9(3), which governs the award of damages in an action under ch. 93A, § 2, provides in part:

[I]f the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willing or knowing violation of said section two or the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated section two.

Mass.Gen.Laws Ann. ch. 93A, § 9(3) (West 1984).

Chapter 93A, § 9(4), which governs the award of attorney's fees and costs in an action under ch. 93A, § 2 provides:

If the court finds in any action commenced hereunder that there has been a violation of section two, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action; provided, however, the court shall deny recovery of attorney's fees and costs which are incurred after the rejection of a reasonable written offer

the Northampton District Court granted summary judgment[5] in favor of the Plaintiff. The Debtor responded by filing a timely Notice of Appeal and a claim for a jury trial in the Massachusetts Superior Court, Hampden Division. Plaintiffs followed by filing a motion for summary judgment in the Superior Court case. However, prior to action by the Superior Court on said motion for summary judgment, the Debtor and his wife, Marilyn A. Christian, filed the instant Chapter 7 petition on July 16, 1993 in this Court. Notwithstanding the Chapter 7 filing, on July 29, 1994, Superior Court Justice Spina entered judgment for the Plaintiffs against the Debtor and Prospect in the Superior Court action in the amount of $5,322.79 plus interest, costs and attorney's fees. Subsequently, this case was voluntarily converted to a Chapter 11 case.

The Plaintiffs filed the instant adversary proceeding on November 15, 1993. Through their Complaint, the Plaintiffs seek a determination that their claim is established in the amount of the District and Superior Court judgments, and should be deemed non-dischargeable, pursuant to 11 U.S.C. § 523(a)(4). The Plaintiffs argue that (1) Plaintiffs are entitled to summary judgment on their state law claims under the doctrine of collateral estoppel; (2) summary judgment is appropriate since the Defendant failed to present any facts which controvert the Plaintiffs' claim that the Debtor violated his statutory duties under Massachusetts law; (3) the Debtor's defenses[6] are meritless; (4) the claim is not dischargeable under § 523(a)(4) in that it arose out of a defalcation by the Debtor while he was acting in a fiduciary capacity. Plaintiffs urge the Court to find a fiduciary relationship created by a statutory trust relationship grounded in Mass.Gen. Laws Ann. ch. 186, § 15B.

The Debtor filed an opposition and brief. He argues that (1) there is no final judgment, either from the District Court or the Superior Court,[7] and that such finality is a necessary element of collateral estoppel, and (2) Mass.Gen.Laws Ann. ch. 186, § 15B does not create a fiduciary relationship between landlord and tenant for the purposes of § 523(a)(4).

of settlement made within thirty days of the mailing or delivery of the written demand for relief required by this section.
Mass.Gen.Laws Ann. ch. 93A, § 9(4) (West 1984).

5. The District Court entered judgment as follows:
Count I ($1,856.77): security deposit of $575.00 × 3 = $1,725.00 plus interest at the rate of 5% from September 30, 1991 to July 2, 1992 (9 mos. and 2 days) in the amount of $64.69 and interest on the security deposit of $575.00 from May 1, 1989 to August 31, 1991 (28 mos.) in the amount of $67.08.
Count II ($194.07): interest at the rate of 5% on the last month's rent of $575.00 for the period from May 1, 1989 to July 31, 1991 (27 mos.) in the amount of $64.69 × 3.
Count III ($5,074.99): security deposit of $575.00 and total interest due of $153.33 totalling $728.33 which was tripled to $2,184.99 as a willing and knowing violation of Ch. 93A, plus reasonable attorney's fees of $2,890.00. See Exhibit "B" of Plaintiff's Motion for Summary Judgment.

6. The Debtor failed to assert any substantive defenses or counterclaims in his Answer filed on December 7, 1993. However, at the hearing held on Plaintiffs' motion for summary judgment, the Debtor asserted that the Plaintiffs breached the lease by (1) subletting the apartment without the Landlord's consent; and (2) failing to notify the Landlord of their intent to terminate the tenancy, or rather, their intent not to renew the lease which expired on August 31, 1991. This Court finds these defenses meritless. Firstly, the "Lease Extension Agreement", which was executed and signed by the Debtor, provided that Butler would replace Regan under the lease. Secondly, the lease contains no requirement of a tenant termination notice, and the Court is unaware of any statute which requires that a tenant give notice of the tenant's intent not to renew a lease when the lease expires by its own terms on a specific date. Finally, inasmuch as the Debtor admits facts constituting a violation of ch. 186, § 15B(3) and/or (4), the Debtor had no right to retain the security deposit for any purpose pursuant to ch. 186, § 15B(6).

7. The Debtor alleges that the Superior Court's entry of summary judgment in favor of the Plaintiff on July 29, 1993 violated the automatic stay under 11 U.S.C. § 362, since the Chapter 7 petition was filed on July 14, 1993. The Debtor's opposition includes a file copy of a "Suggestion of Bankruptcy" which is dated (not datestamped) July 21, 1993. The Debtor asserts that the Superior Court's order of July 29, 1994 is, therefore, not a final judgment for purposes of establishing the debt resulting from a fraud or defalcation under § 523(a)(4).

After the hearing on Plaintiff's motion for summary judgment, the Court took the Plaintiff's motion under advisement.

## II. DISCUSSION

### A. Fiduciary Capacity under § 523(a)(4)

█ The Plaintiffs are entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c);[8] *See Celotex v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the instant case, the material facts demonstrating the Debtor's breach of Mass.Gen.Laws.Ann. ch. 186, § 15B are not disputed.

█ In order for the Plaintiffs to prevail under § 523(a)(4), the Plaintiffs must demonstrate by a preponderance of the evidence that the Debtor committed fraud or defalcation, while acting in a fiduciary capacity. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). A defalcation is nothing more than a failure to account for money held in a fiduciary capacity and does not require a showing of intentional wrongdoing. *Hoff v. Carroll (In re Carroll)*, 140 B.R. 313, 316 (Bankr.D.Mass.1992); *Kwiat v. Doucette (In re Kwiat)*, 81 B.R. 184, 189 (D.Mass.1987). Therefore, if it can be established that the Debtor held the security deposit (and interest thereon) in a fiduciary capacity, the failure to pay it over to the Plaintiffs at the termination of their tenancy constituted defalcation.

█ The meaning of "fiduciary capacity" under § 523(a)(4)[9] is a narrowly defined federal question which is limited in its application to express or technical trust relationships, not trusts which the law implies from a contract. *See e.g., Davis v. Aetna Acceptance Corp.*, 293 U.S. 328, 333, 55 S.Ct. 151,

153–54, 79 L.Ed. 393 (1934). Thus, implied or constructive trusts and trusts ex maleficio are not susceptible to the establishment of a fiduciary relationship under the Bankruptcy Code. *See Id.* at 333, 55 S.Ct. at 153–54; *see also Wagner v. Abood (In re Abood)*, 172 B.R. 166, 167 (Bankr.D.R.I. 1994).

█ In determining whether a technical trust relationship exists, courts have consistently considered state law relevant in determining whether a debtor was acting as a fiduciary under the Bankruptcy Code. *See e.g., In re Snyder*, 101 B.R. 822, 831 (Bankr. D.Mass.1989), *aff'd in part, reversed in part*, 923 F.2d 840 (1st Cir.1990), *cert. denied*, 500 U.S. 923, 111 S.Ct. 2030, 114 L.Ed.2d 115 (1991); *In re Kwiat*, 81 B.R. 184, 188 (D.Mass.1987). Specifically, state law is consulted for guidance on whether the requisite trust relationship exists. *See In re Kwiat*, 81 B.R. at 188. In order to create a fiduciary relationship, a state statute must define the trust res, spell out the trustee's fiduciary duties and impose a trust prior to and without reference to the wrong which created the debt. *Woodworking Enterprises, Inc. v. Baird*, 114 B.R. 198, 202 (Bankr. 9th Cir. 1990).

█ Statutorily created "trusts" create fiduciary duties that are dependent upon the relationship between the parties, but are not created by agreement of the parties nor created ex post facto as a remedial measure to right a wrong. *See e.g., Ouaif v. Johnson*, 4 F.3d 950, 953–54 (11th Cir.1993); *Discount Home Center, Inc. v. Turner (In re Turner)*, 134 B.R. 646, 653–56 (Bankr.N.D.Okla.1991). To show a fiduciary capacity arising from a statutorily created trust for the purposes of § 523(a)(4), a creditor must point to an express legislative design to create a trust relationship. *Tway v. Tway (In re Tway)*, 161 B.R. 274, 279 (Bankr.W.D.Okl.1993); *Pacific–Midwest Gas Co. v. Hutton (in re Hutton)*, 117 B.R. 1009, 1013 (Bankr.N.D.Okla. 1990); *Commonwealth of Virginia v. Myers*

---

**8.** Fed.R.Civ.P. 56 applies in adversary proceedings. Fed.R.Bankr.P. 7056.

**9.** Section 523(a)(4) provides:
 (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does

not discharge an individual debtor from any debt—
 (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny.
11 U.S.C. § 523(a)(4).

*(In re Myers),* 52 B.R. 901, 905 (Bankr. E.D.Va.1985).

Cases analyzing state statutory schemes have produced mixed results in determining whether fiduciary duties were created for purposes of § 523(a)(4). *E.g. In re Marchiando,* 13 F.3d 1111 (7th Cir.1994) (Illinois statute did not impose fiduciary duties on licensed lottery ticket agents for nondischargeability purposes); *Quaif v. Johnson,* 4 F.3d 950 (Georgia statute created fiduciary duties on the part of debtor insurance agent); *Coburn Co. of Beaumont v. Nicholas (In re Nicholas),* 956 F.2d 110 (5th Cir.1992) (Texas Construction Trust Fund Statute creates fiduciary duties); *Capitol Indemnity Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.),* 760 F.2d 121 (6th Cir.1985) (Michigan law creates fiduciary relation between insurance agency and insurance principal); *Carey Lumber Co. v. Bell,* 615 F.2d 370 (5th Cir.1980) (Oklahoma statute clearly imposed fiduciary duties on construction mortgagors); *Lemars Mutual Insurance Co. v. Cutler (In re Cutler),* 74 B.R. 712 (N.D.Iowa 1987) (relationship between insurance company and insurance agent was debtor-creditor and not fiduciary under Iowa law); *Anderson v. Currin (In re Currin),* 55 B.R. 928, 923–33 (Bankr.D.Colo.1985) (Colorado's real estate broker's licensing statute imposed fiduciary duties on brokers).

There is little precedent available to aid in determining whether Massachusetts General Laws, ch. 186, § 15B, creates a trust relationship between lessors and tenants for purposes of § 523(a)(4). The Plaintiffs point to the holding of *Alaska Teamster–Employer Pension Trust v. Wise (In re Wise),* 120 B.R. 537 (Bankr.D.Alaska 1990). In the *Wise* case, the court considered whether an Alaska statute, which governed the retention of security deposits and pre-paid rent under its Uniform Landlord and Tenant Act, created a statutory trust to establish the element of fiduciary capacity under § 523(a)(4). *Id.* at 538. That statute provided in part:

> (c) [a]ll money paid to the landlord by the tenant as prepaid rent or as a security deposit in a lease or rental agreement shall be promptly deposited by the landlord, wherever practicable, in a trust account in

a bank, savings and loan association, or licenses escrow agent, and the landlord shall provide to the tenant the terms and conditions under which the prepaid rent or security deposit or portions of them may be withheld by landlord; nothing in this chapter prohibits the landlord from commingling prepaid rents and security deposits in a single financial account.

Alaska Stat. § 34.03.070(c) (1990). The *Wise* court recited the elements of § 523(a)(4), and simply concluded that the applicable Alaska statute "seems to be the type of statute which creates a statutory trust relationship called for by § 523(a)(4) to establish nondischargeability for a fiduciary for defalcation." 120 B.R. at 538. While the conclusion reached by the *Wise* court may be the correct result, it does not aid in analyzing the Massachusetts statute.

This Court finds the discussion of statutorily created trusts in the recent Seventh Circuit *Marchiando* decision particularly well-reasoned. In that case, the applicable Illinois state statute provided that a licensed lottery ticket agent would serve as a trustee of lottery proceeds, was prohibited from commingling them, and was required to pay them over to the state. *Id.* at 1113. Violation of the statute subjected the ticket agent to criminal prosecution. *Id.* In the *Marchiando* case, the debtor store owner failed to remit the proceeds of her lottery ticket sales to the Illinois Department of the Lottery. Notwithstanding the statutory language, the Seventh Circuit determined that the Illinois statute did not intend to impose a trust or fiduciary relationship until the wrong was committed:

> Technically, Marchiando became the trustee as soon as she received her license to sell lottery tickets. Realistically, the trust did not begin until she failed to remit ticket receipts. For until then she had no duties of a fiduciary character toward the Department of Lottery or anything or anyone else. Until then, she was just a ticket agent. The state, afraid that she might be a disloyal agent, required her to keep proceeds of her ticket sales separate from her other funds and threatened her with criminal punishment if she did not. These were

devices by which the state sought to establish and enforce a lien in the proceeds[.]

*Id.* at 1116.

The *Marchiando* Court also focused on the underlying need for fiduciary status growing out of the inequality of relationship:

The fiduciary may know much more by reason of professional status, or the relation may be one that requires the principal to repose a special confidence in the fiduciary; both factors are present in the case of a lawyer-client relation and also the relation between director and shareholder or managing partner and limited partner. Or the principal may be a child, lacking not only knowledge but also the power to act upon it. These are all situations in which one party to the relation is incapable of monitoring the other's performance of his undertaking, and therefore the law does not treat the relation as a relation at arm's length between equals.

*Id.* at 1116. Rejecting the notion that a ticket agent had superior power or expertise in relation to a state bureaucracy, the Seventh Circuit concluded that the absence of an "inequality of relation" between the state and ticket agent obviated the need to impose fiduciary duties on the ticket agent. *Id.* The *Marchiando* court warned:

If ... a fiduciary is anyone whom a state calls a fiduciary ... states will have it in their power to deny a fresh start to their debtor by declaring all contractual relations fiduciary.... They are apt to seek a preferred position for their own debts by declaring people who do business with the state fiduciaries of the state or its agencies.

*Id.*

Application of the *Marchiando* analysis to the instant proceeding dictates a finding of nondischargeability pursuant to § 523(a)(4).

Firstly, the Debtor's fiduciary duties did not arise at the moment he failed to remit the proceeds of the security deposit in accordance with the statutory scheme. On the contrary, upon receipt of a security deposit, a lessor is obliged to perform the following duties under the statute: (1) to maintain a record of the security deposit available for inspection by the tenant; (2) to hold the security deposit in a separate interest bearing account; (3) to provide to the tenant, within 30 days of receiving the security deposit, a receipt indicating the name and location of the bank as well as the amount and account number of said deposit. *See* Mass. Gen.Laws Ann. ch. 186, § 15B(2)(d), (3)(a).[10] A lessor is also obligated to remit yearly accountings to the tenant if the tenancy extends for a period of one year or longer. *Id.* § 15B(3)(b). Within thirty (30) days after the termination of the tenancy, the lessor is obliged to remit the full security deposit and interest thereon, less any statutorily authorized deductions and expenses. *Id.* § 15B(4). These duties arise irrespective of any breach or wrong committed by the landlord. If the lessor fails to comply with these statutory obligations, the lessor forfeits the right to retain any portion of the security deposit or to counterclaim for any damage in an action by a tenant to recover the security deposit. *Id.* § 15B(6).

Secondly, *Marchiando* suggests that fiduciary obligations may be statutorily imposed if there is an "inequality of relation" based on power or expertise, where one party is incapable of monitoring the other's performance of his undertaking. Chapter 186, § 15B manifests the legislature's concern for the welfare of residential tenants who are generally in an inferior bargaining position and find traditional avenues of legal redress relatively useless and costly. *See Mellor v. Berman*, 390 Mass. 275, 282, 454 N.E.2d 907, 912 (1983); *Hampshire Village Associates v. District Court of Hampshire*, 381 Mass. 148, 152–53, 408 N.E.2d 830, 833 (1980), *cert. denied*, 449 U.S. 1062, 101 S.Ct. 785, 66 L.Ed.2d 604 (1980); *Shwachman v. Khoroshansky*, 15 Mass.App.Ct. 1002, 1002–03, 448 N.E.2d 409, 411 (1983); *Goes v. Feldman*, 8 Mass.App.Ct. 84, 91, 391 N.E.2d 943, 947 (1979). *See also Castenholz v. Caira*, 21 Mass.App.Ct. 758,

---

10. *Cf. Stone v. Feldman (In re Feldman)*, 111 B.R. 481 (Bankr.E.D.Pa.1990) (relationship arising out of real estate escrow agreement was "fiduciary relationship" within the meaning of § 523(a)(4) where state statute mandated real estate broker to account to depositor for funds deposited in escrow).

763, 490 N.E.2d 494, 497 (1986) ("The purpose of [ch. 186, § 15B] subsection (7) is not to pillory the landlord, but to make resort to litigation feasible for tenants."). This Court finds that the lessor/residential tenant relationship is very seldomly a "relation at arm's length between equals" and, therefore, calls for the imposition of fiduciary duties on the lessor and for the benefit of the tenant. *See In re Marchiando,* 13 F.3d at 1116.

Finally, *Marchiando* cautioned against giving state legislatures unfettered discretion to declare certain contractual relations with the state "fiduciary" in nature for § 523(a)(4) purposes. That concern is not applicable here. The Massachusetts legislature did not enact ch. 186, § 15B to enhance the Commonwealth's own debt collection program. The purpose of the statute, as stated above, is to protect tenants from potential abuse by lessors who are typically in a superior bargaining position in relation to their tenants.

In view of the foregoing, the Court finds that Chapter 186, § 15B of the Massachusetts General Laws imposes fiduciary duties on the residential landlord for the benefit of the tenant for nondischargeability purposes under § 523(a)(4). Therefore, Plaintiffs' undisputed claim, arising from Defendant's violation of ch. 186, § 15B(2)(a)–(c), (3)(a), (3)(b) and (4), and arising from the Debtor's defalcation is deemed nondischargeable under § 523(a)(4).

## B. Punitive Damages

■ The Court is finally left to determine the propriety of excepting from discharge punitive damages to which the Plaintiffs may be entitled under Mass.Gen.Laws Ann. ch. 186, § 15B and Mass.Gen.Laws Ann. ch. 93A, § 9.

Section 523 provides that "[a] discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from *any debt–* . . . (4) for

fraud or defalcation while acting in fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4) (emphasis supplied). The Bankruptcy Code defines "debt" as "liability on a claim." 11 U.S.C. § 101(12). The broad definition of "claim" is not only set forth in the Code[11] but has also been acknowledged by the Supreme Court. *See Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 2130, 109 L.Ed.2d 588 (1990) ("the meanings of "debt" and "claim" [are] coextensive...." As is apparent, Congress chose expansive language in both definitions [of 'claim' and 'debt']). *See also Johnson v. Home State Bank,* 501 U.S. 78, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991).

Also deserving of examination and consideration is 11 U.S.C. § 726(a)(4). Section 726(a)(4) provides:

(a) Except as provided in section 510 of this title, property of the estate shall be distributed—

(4) fourth, in payment of any allowed claim, whether secured or unsecured, for any fine, penalty, or forfeiture, or for multiple, exemplary, or *punitive damages,* arising before the earlier of the order for relief or the appointment of a trustee, to the extent that such fine, penalty, forfeiture, or damages are not compensation for actual pecuniary loss suffered by the holder of such claim[.]

11 U.S.C. § 726(a)(4) (emphasis supplied). The bankruptcy court in *Placer U.S. Inc. v. Dahlstrom (In re Dahlstrom),* 129 B.R. 240, 242 (Bankr.D.Utah 1991), suggested that the inclusion of punitive damages in the distribution scheme for Chapter 7 property reveals Congress' intent to administer punitive damages as "debts" under the Bankruptcy Code.

Notwithstanding the above statutory provisions which seem to suggest that punitive damages are "debts" for nondischargeability purposes, the Court is also mindful of

---

11. Section 101(5) provides:

[C]laim means-
(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured[.]

11 U.S.C. § 101(5).

§ 523(a)(7) which provides for nondischargeability of a debt owed to a government unit for a "fine, penalty, or forfeiture ... [that] is not compensation for actual pecuniary loss." *See* 11 U.S.C. § 523(a)(7). Some courts have been obliged to find that § 523(a)(7) signifies Congress' intent to except from discharge noncompensatory damages *only* if owed to a government agency. *E.g. Ellwanger v. Bette Joyce McBroom Estate (In re Ellwanger),* 105 B.R. 551, 555–56 (Bankr. 9th Cir.1989); *Petruzzi v. DeLuca (In re Deluca),* 111 B.R. 839, 842 (Bankr.C.D.Cal.1990); *McCullough v. Suter (In re Suter),* 59 B.R. 944, 947 (Bankr.N.D.Ill.1986). However, this Court is more persuaded by Judge Clark's logic in *Dahlstrom.* Judge Clark stated:

> [t]here is nothing in the language of § 523(a) or its legislative history to indicate that subsection (a)(7) was intended to preclude private entities from pursuing nondischargeability judgments of punitive damages under its other subsection. Moreover, the focus of the two subsections are entirely different. Subsection (a)(7) focuses on the nature of the act which gave rise to the liability.

129 B.R. at 246. Section § 523(a)(4) similarly focuses on the nature of the act for nondischargeability purposes. Specifically, subsection (a)(4) calls for a determination of "fraud or defalcation while [the debtor was] acting in a fiduciary capacity". See 11 U.S.C. § 523(a)(4).

This Court also notes that a majority of courts interpreting § 523(a)(2), (4) and (6) have held that both actual and punitive damages are excepted from discharge by those statutes. *See Dahlstrom,* 129 B.R. 240, 243–44 (providing an extensive listing of cases). In the First Circuit, there is little caselaw on this issue. *E.g., Reynolds–Marshall v. Hallum,* 162 B.R. 51 (D.Me.1993) (punitive damages award found nondischargeable under § 523(a)(6)); *Sack v. Friedlander (In re Friedlander),* 170 B.R. 472 (Bankr.D.Mass. 1994) (punitive damages award found nondischargeable under § 523(a)(2)(A)). The District Court in *Reynolds–Marshall* considered, among other issues, whether or not the discharge exception for willful and malicious injury encompassed punitive damages that arose from conduct that was adjudged willful and malicious in the state court. In that case, Chief Judge Carter noted that although there may be disagreement among bankruptcy and district courts [12] over whether punitive damages may be found nondischargeable under § 523(a)(6):

> [t]hese disagreements ... essentially boil down to policy; namely, the emphasis that a particular court gives to the 'fresh start' policy underlying the Bankruptcy Code.... Courts which view the fresh start policy as informing every provision of the Code tend to read the discharge exceptions narrowly, to provide only for compensation to creditors for willful and malicious while not encompassing punitive damage award that will burden the debtor for years beyond the discharge. Other Courts view the language of the discharge exceptions as overriding the fresh-start policy with respect to debts incurred as a result of fraud, willful and malicious injury, and other conduct that Congress did not intend for the bankruptcy law to forgive.

*Id.* at 59–60.

The fresh start promised by the Bankruptcy Code is not an entitlement. The Supreme Court, in *Grogan,* has made it clear that the fresh start is available only to the "honest but unfortunate debtor." 498 U.S. at 286–87, 111 S.Ct. at 659. "[T]he Bankruptcy Court is not a forum for excusing misconduct. And there is no discharge for discharge's sake in bankruptcy. Discharge is a means to achieve the legitimate purpose of providing *honest* debtors with a *deserved* 'fresh start'." *Bryan v. Manley (In re Manley),* 135 B.R. 137, 147 (Bankr.N.D.Okl.1992). A recent Ninth Circuit opinion, *Bugna v. McArthur (In re Bugna),* 33 F.3d 1054 (9th Cir.1994), which denied the dischargeability of punitive damages under § 523(a)(4), similarly stated:

---

12. Circuit courts of appeal that have considered the issue agree that punitive damages are not excepted from discharge under § 523(a)(6). *See e.g., St. Laurent v. Ambrose (In re St. Laurent),* 991 F.2d 672 (11th Cir.1993); *Johnson v. Miera (In re Miera),* 926 F.2d 741 (8th Cir.1991); *Klemens v. Wallace (In re Wallace),* 840 F.2d 762 (10th Cir.1988); *Combs v. Richardson,* 838 F.2d 112 (4th Cir.1988); *Moraes v. Adams (In re Adams),* 761 F.2d 1422 (9th Cir.1985).

[debtors] who incur liability for punitive damages through commission of fraud while acting in a fiduciary capacity are neither honest nor unfortunate, and they do not deserve the benefit of the fresh start policy. For this reason, we have previously rejected the same fresh start argument in finding that section 523(a)(6) bars discharge of punitive damages. (citation omitted). We see know reason why [debtor's] argument carries any greater weight in the context of section 523(a)(4).

*Id.* at 1059.

The *Manley* court, another court which has held punitive damages nondischargeable under § 523(a)(4), acknowledged that equity courts "should be reluctant to *award* punitive damages." 135 B.R. at 146. However, the Oklahoma bankruptcy court astutely remarked that equity courts should be "reluctant to enjoin enforcement of those which are properly awarded by other courts," since "punitive damages may be allowed by the [s]tate for reasons of policy." *See id.* at 146.

The Massachusetts Legislature, for reasons of policy, has decided to award punitive damages for a *non innocent* breach of designated provisions of Massachusetts General Laws, ch. 186, § 15B. "Section 15B . . . is not a minefield of potential multiple penalties for a landlord who makes an innocent mis-

take." *Castenholz*, 21 Mass.App.Ct. at 762, 490 N.E.2d at 497; *see* Mass.Gen.Laws, ch. 186, § 15B(7). Similarly, for reasons of policy, regulations promulgated by the Massachusetts Attorney General under the authority of Mass.Gen.Laws Ann., ch. 93A § 2(c), provide that a violation of ch. 186, § 15B is an "unfair or deceptive practice" for ch. 93A purposes.[13] This Court has determined that Massachusetts General Laws, ch. 186, § 15B imposes a fiduciary relationship between a residential landlord and tenant for nondischargeability purposes under § 523(a)(4). Since "there is no conflict between the 'fresh start' policy and the punishment of *some* debtors", *see In re Manley*, 135 B.R. at 147, this Court does not hesitate to except from discharge punitive damages which are not "arbitrarily penal" in that they only seek to punish certain culpable conduct by residential landlords. *See Castenholz*, 21 Mass.App. Ct. at 763, 490 N.E.2d at 497. Accordingly, this Court concludes that the punitive damages, which may be imposed under ch. 186, § 15B and ch. 93A, § 9 and the regulations promulgated thereunder, are nondischargeable under § 523(a)(4). *Cf. In re Friedlander*, 170 B.R. at 480 (punitive damages portion of judgment debt under ch. 93A, § 11 can be excepted from discharge under § 523(a)(2)(A)).

---

**13.** Mass.Regs.Code tit. 940, § 3.17(4) provides in part:

It shall be an unfair and deceptive practice for an owner to:

(b) fail to give to the tenant a written receipt indicating the amount of rent in advance for the last month of occupancy, and a written receipt indicating the amount of the security deposit, if any, paid by the tenant, in accordance with M.G.L. c. 186, § 15B;

(c) fail to pay interest at the end of each year of the tenancy, or any security deposit held for a period of one year or longer from the commencement of the term of the tenancy, as required by M.G.L. c. 186, § 15B;

(d) fail to hold a security deposit in a separate interest-bearing account to provide notice to the tenant of the bank account and account number, in accordance with M.G.L. c. 186, § 15B;

(e) fail to submit to the tenant upon receiving a security deposit or within ten days after commencement of the tenancy, whichever is later, a separate written statement of the present condition of the premises in accordance with M.G.L. c. 186, § 15B;

(f) fail to furnish to the tenant, within 30 days after the termination of occupancy under a tenancy-at-will or the end of the tenancy as specified in a valid written rental agreement, an itemized list of damage, if any, and written evidence indicating the actual or estimated cost of repairs necessary to correct such damage, in accordance with M.G.L. c. 186, § 15B;

(g) fail to return to the tenant the security deposit or balance thereof to which the tenant is entitled after deducting any sums in accordance with M.G.L. c. 186, § 15B, together with interest, within thirty days after termination of occupancy under a tenancy-at-will agreement or the end of the tenancy as specified in a valid written agreement;

. . . . .

(k) otherwise fail to comply with the provisions of M.G.L. c. 186, § 15B.

940 CMR 3.00 shall not be deemed to limit any rights or remedies of any tenant or other person under M.G.L. c. 186 §§ 15B(6)(7).

Mass.Regs.Code tit. 940, § 3.17(4) (1993).

In view of the foregoing, the Court hereby awards partial summary judgment to the Plaintiffs on their Complaint by finding and ruling that (1) the debt arising from Defendant's violation of Massachusetts General Laws ch. 186, §§ 15B(2)(a)–(c), (3)(a), (3)(b) and (4), and (2) the punitive damages which may be awarded pursuant to ch. 186, § 15B and pursuant to ch. 93A, § 9 are nondischargeable, pursuant to § 523(a)(4). The Court will schedule a further hearing on the assessment of damages, costs and attorneys fees.