Gants, J.
This case began in Cambridge District Court with the plaintiff, Gentle Communications, LLC (“GCL”), seeking return of a $21,723.75 deposit it had furnished to the defendant, Morris Naggar (“Naggar”), in his capacity as Trustee of the 3MJ Realty Trust (“the Trust”). GCL had given Naggar the deposit with a proposed lease signed by its Chief Operating Officer, but the lease ultimately was never executed. Rather than return the deposit money, Naggar brought a declaratory judgment counterclaim, which caused the District Court action to be dismissed and the instant action brought to Superior Court. This lawsuit has now blossomed into a six-count complaint brought by GCL, seeking essentially the return of this deposit money, plus attorneys fees and treble damages for Naggar’s alleged unfair and deceptive acts and practices in violation of G.L.c. 93A. The Trust has brought a six-count counterclaim, alleging essentially breach of contract, detrimental reliance, misrepresentations, and violations of Chapter 93A. GCL now moves for summary judgment on its complaint and Naggar’s counterclaim. After hearing, for the reasons stated below, GCL’s motion for summary judgment is ALLOWED.
BACKGROUND
In evaluating a motion for summary judgment, I must rely on facts not in dispute as well as disputed facts viewed in the light most favorable to the nonmoving party. Beal v. Board of Selectmen of Hingham, 419 Mass. 535, 539 (1995). Consequently, the facts stated below are presented in the light most favorable to Naggar and should not be misunderstood as findings of the Court.
In February 2002, GCL commenced negotiations with Naggar to lease property owned by the Trust at 589 Massachusetts Avenue in Cambridge for use as a dental office. On April 12, 2002, Nagger and Gentle entered into a Letter of Intent that summarized the basic terms and conditions of the lease, identifying the tenant as Gentle Dental. The Letter of Intent specifically provided that it was “meant to serve as the outline of a prospective business arrangement between the parties” and that “only a mutually acceptable lease executed by both parties will be binding.”
According to Naggar, at the time he executed this Letter of Intent, he understood that GCL held the assets, and that Gentle Dental was simply the d/b/a name placed on the dental office storefronts. He did not know that GCL was the management company for the Gentle Dental offices in the Boston area, while a separate corporation, Gentle Dental Associates, LLC (“GDA”), employed the dentists and provided dental services to the public under the trade name “Gentle Dental.” Naggar concedes that his misunderstanding was not based on anything that anyone from GCL told him, but arose from the content of the Letter of Intent prepared by a GCL representative. In fact, all that the Letter of Intent states on this subject is that the tenant *367 is described as “Gentle Dental,” care of Michael Chang at GCL.
On or about July 2,2002, after further negotiations regarding the terms of the Lease, a proposed Lease was executed by Barry Bornfriend, GCL’s Chief Operating Officer, and provided to Naggar, along with a deposit check in the amount of $21,723.75, which under the proposed Lease constituted the security deposit to “be held by Landlord as security for Tenant’s performance hereunder.” Under Section 14.09 of the proposed Lease, “this document shall become effective and binding only upon the execution and delivery hereof by both Landlord and Tenant.”
Naggar, however, did not immediately execute and deliver the proposed Lease to make it effective and binding. Instead, he sought further financial information from GCL. On July 29, 2002, he obtained the GCL and GDA combined income statement, and realized for the first time that they were two separate entities. Naggar was concerned that there were two related entities which could shift income from one to the other, but only one entityGCLon the proposed Lease. Naggar offered GCL two options to revise the proposed Leaseeither place both related entities on the Lease or have the other sign a guaranty. A representative from these related entities asked Naggar to send them the proposed guaranty so that they could take a look at it; no one from GCL or GDA ever agreed that they would sign the guaranty.
On September 23, 2002, Sam Shames from GCL and/or GDA spoke by telephone with Naggar and Naggar’s attorney. Shames informed them that GCL and GDA had elected not to execute the proposed guaranty. Instead, Shames indicated that GCL and GDA would execute the proposed Lease as co-tenants. Consequently, on September 23, 2002, Naggar’s attorney sent GCL and GDA a proposed Lease that identified both GCL and GDA as tenants. Shortly after it was sent, Naggar left the country on vacation. Neither GCL nor GDA ever executed this revised Lease. Rather, on October 2, 2002, before Naggar had returned from vacation, Bornfriend wrote Naggar a letter revoking the offer to execute a Lease, terminating all negotiations regarding a Lease, and demanding return of the deposit. Naggar refused to return the deposit. Instead, on November 18, 2002, Naggar faxed to GCL an executed copy of the July 2, 2002 Lease. GCL refused to renew its offer and declined to enter into the proposed Lease. GCL never commenced occupancy of the premises at 589 Massachusetts Avenue in Cambridge.
DISCUSSION
Summary judgment is appropriate where there exists no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 713-14 (1991); Cassesso v. Commissioner of Corrections, 390 Mass. 419, 422 (1983); Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). The moving party has the burden of affirmatively demonstrating that a genuine issue of material fact does not exist. Pederson, 404 Mass, at 16-17.
GCL’s Claim for the Return of the Deposit
As stated above, under Section 14.09 of the proposed July 2, 2002 Lease, “this document shall become effective and binding only upon the execution and delivery hereof by both Landlord and Tenant.” It is plain from these facts that Naggar failed to execute and deliver the July 2, 2002 Lease until after GCL had revoked this offer in writing. Instead, Naggar made two counter-offers that GCL refused to accept. Massachusetts Housing Finance Agency v. Whitney House Assoc., 37 Mass.App.Ct. 238, 241 (1994) (where the purported acceptance of an offer contains substantial or material variation in its terms, there is no binding contact, but instead a counteroffer). Naggar’s attempt to accept the offer by executing the proposed Lease after the offer had been terminated is of no legal consequence because there was no longer any offer for him to accept. Id. Consequently, as a matter of law, there was no lease agreement.
In the absence of a Lease, Naggar had no legal right to retain the deposit, which was provided to him only as security for GCL’s performance under an executed Lease. Therefore, GCL is entitled to the immediate return of this deposit under the doctrine of unjust enrichment and the tort of conversion.
Naggar’s Counterclaims
Naggar’s defenses and counterclaims attempting to justify his retention of this deposit all fail as a matter of law. He seeks a declaratoiy judgment that the July 2, 2002 proposed Lease that he belatedly executed after the offer had been revoked is enforceable. Yet, as every law student learns in first year Contracts, an offer does not become binding if it is accepted after the offer has been revoked. See e.g., Epstein v. Lahey Clinic Foundation, Inc., 14 Mass.App.Ct. 981, 439 (1982). Therefore, GCL is entitled to summary judgment on Naggar’s counterclaim for declaratory judgment (Count I).
In the alternative, Naggar alleges that the Lease, with a guaranty, somehow became enforceable as a result of verbal statements made by GCL or GDA representatives, but concedes in his deposition that no one from GCL or GDA ever explicitly agreed to execute a guaranty. He also alleges that the Lease, with GCL or GDA as co-tenants, somehow became enforceable as a result of the indications from Shames that this change would be agreeable to GCL and GDA, but the proposed Lease that emerged from the Shames conversation was never signed by anyone from GCL or GDA. Under the Statute of Frauds, especially since the proposed Lease was for a term of ten years, the proposed Lease could not become binding as a contract in the absence of the signature of an authorized GCL and GDA representative. G.L.c. 259, §1. There *368 fore, GCL is entitled to summary judgment on Naggar’s breach of contract counterclaim (Count II). Since there was no contract, GCL is also entitled to summary judgment on Naggar’s counterclaim for the breach of the implied covenant of good faith and fair dealing (Count III).
Naggar alleges in Count IV that he relied to his detriment on promises from GCL that the proposed Lease would also be executed by GDA. Even if Shames indeed, as Naggar’s attorney attested, “indicated” on September 23, 2002 that both GDA and GCL would execute the Lease as co-tenants, Naggar cannot prevail on this claim unless there is evidence that Naggar relied on this purported promise to his detriment. See, e.g., Simon v. Simon, 35 Mass. App. 705, 711-12 (1994); Levin v. Rose, 302 Mass. 378, 381-82 (1939). Here, there is no evidence of reliance in the summary judgment record. Naggar testified that he left the country on vacation shortly after the revised Lease was sent to GDA and GCL after the discussion with Shames, and did not return until after the October 2, 2002 letter from Bornfriend revoking the offer to execute a Lease had been delivered to his office. There is no evidence that he did (or did not do) anything while on vacation in reliance on his expectation that GDA would add its signature to the Lease. Nor can any rational factfinder infer from the circumstances of this transaction that, had Shames not given this indication, Naggar would have placed the property on the market between September 23 and October 2 and succeeded in leasing it. Even after the October 2, 2002 letter had been received, which categorically declared that GCL was ending all negotiations regarding the proposed Lease, Naggar attempted to make GCL a tenant by signing the original proposed Lease on November 18, 2002. In short, even though the October 2 letter ended any reasonable reliance on Shames’ “indication” that GCL and GDA would execute the proposed Lease as co-tenants, the property remained available for lease at least through November 18, since Naggar sought on that date to make GCL a tenant. Therefore, GCL is entitled to summary judgment on the detrimental reliance claim in Count IV.
GCL is also entitled to summary judgment on Naggar’s claim of misrepresentation in Count V. This claim is premised on GCL’s alleged misrepresentations that it did business as Gentle Dental, which Naggar contends that he relied on to his detriment. The misrepresentation claim fails on three separate grounds. First, there is no evidence that GCL made a fraudulent misrepresentation concealing the corporate existence of GDA. Naggar concedes that his misunderstanding that Gentle Dental was simply the d/b/a trade name used by GCL did not come from statements made by anyone from GCL but instead derived from the content of the Letter of Intent, which he contends was prepared by a GCL representative. As noted earlier, all that the Letter of Intent states on this subject is that the tenant is described as “Gentle Dental,” care of Michael Chang at GCL. This is insufficient to support a claim of misrepresentation. Second, before he executed the proposed Lease, Nag-gar learned from financial statements and tax returns provided to him by GCL of the separate corporate existence of GDA. Therefore, there was no detrimental reliance on this alleged misrepresentation. Third, Nag-gar cannot reasonably contend that he relied on the alleged misrepresentation since he ultimately attempted on November 18 to execute the Lease with GCL, after learning of GDA’s corporate existence.
Since the allegations of unfair and deceptive acts and practices in violation of G.L.c. 93A (Count VI) rest on the misplaced factual premises identified above, GCL is entitled to summary judgment on this final counterclaim as well. “It is not... immoral, unethical, oppressive or unscrupulousand therefore not unfair or deceptiveto break off incomplete and imperfect negotiations of a commercial agreement. Every deal that goes sour does not give rise to a c. 93A claim.” Pappas Indus. Parks, Inc. v. Psarros, 24 Mass.App.Ct. 596, 600 (1979).
GCL’s Chapter 93A Claim
Having found as a matter of law that GCL is entitled to the return of its deposit and that all of Naggar’s counterclaims are meritless, this Court must turn to the final questionwhether GCL is entitled to summary judgment on its claim that Naggar engaged in an unfair act or practice by withholding the deposit after receipt of the October 2, 2002 letter revoking the offer and terminating negotiations.
For GCL to prevail on this Chapter 93A claim on summary judgment, it must demonstrate that, as a matter of law, it is entitled to judgment on this claim based solely on undisputed facts. For all practical purposes, for GCL to prevail on summary judgment on this claim, this Court must find as a matter of law that it is an unfair act or practice in trade or commerce in violation of G.L.c. 93A for Naggar to have refused to return the $21,723.75 deposit to GCL after Naggar received the October 2, 2002 letter revoking the offer to execute a Lease, terminating all negotiations regarding a Lease, and demanding return of the deposit. In determining whether an act or practice is unfair within the meaning of G.L.c. 93A, §2, this Court must consider “whether the practice ... is within at least the penumbra of some common-law, statutory, or other established concept of unfairness” or “is immoral, unethical, oppressive, or unscrupulous.” Datacomm Interface, Inc. v. Computerworld, Inc., 396 Mass. 760, 778 (1986), quoting PMP Assocs., Inc. v. Globe Newspaper Co., 366 Mass. 593, 596 (1975), quoting 29 Fed.Reg. 8325, 8355 (1964). This Court finds that when, as is undisputed here:
a prospective commercial tenant executes a lease and provides the putative landlord with the lease *369 for his signature, along with the security deposit provided for under the lease;
the security deposit is provided solely to secure the tenant’s performance under the lease;
the commercial landlord fails timely to execute the lease and make it a binding document;
the tenant, in writing, revokes its offer to execute the lease, terminates all negotiations regarding the lease, and demands the return of its security deposit;
there is no separate agreement that would permit the landlord to keep all or part of the security deposit; and
the tenant had not begun to occupy the premises identified in the lease,
it is unscrupulous and therefore an unfair act or practice in violation of G.L.c. 93A, §2 for the landlord to refuse to return the deposit in full to the prospective tenant. Under these undisputed facts, Naggar had no legal right to retain the deposit and was both legally and morally obligated to return it to GCL.
By holding onto the deposit money, Naggar left GCL with only two realistic options: either come to terms with Naggar so that the money may be returned, allocated to rent, or used as a security deposit, or file suit in court to obtain the return of the deposit. In the absence of a remedy under Chapter 93A, an unscrupulous commercial landlord would usually benefit from withholding the deposit, because the amount of money involved is usually too small to justify the legal fees that would be incurred in filing suit for the return of the deposit. See Castenholtz v. Caira, 21 Mass.App.Ct. 758, 763 (1986). If the tenant were limited to a conversion or unjust enrichment common-law claim, and could not obtain an award of attorneys fees, the tenant might be reluctant to incur the additional expense and risk of a lawsuit, and might instead succumb to the pressure to soften its bargaining position in order to obtain return of some or all of the deposit. This is precisely the type of commercial unfairness that G.L.c. 93A, §11 was intended to remedy.
It is equally plain from the undisputed record that Naggar’s decision to withhold the deposit was willful and knowing. Therefore, this Court finds, in the interests of justice and in accordance with G.L.c. 93A, §11, that GCL shall recover twice the amount of the deposit unscrupulously withheld by Naggar, for a damage award of $43,447.50. This Court shall also award GCL the reasonable attorneys fees it incurred to recover its deposit money. GCL shall submit an affidavit setting forth the amount of attorneys fees it contends are reasonable, with appropriate documentation, no later than March 31, 2004. Naggar may respond to this submission no later than April 16, 2004. A hearing on the question of attorneys fees shall be conducted on April 26, 2004 at 2:00 p.m.
ORDER
For the reasons stated above, the plaintiffs motion for summary judgment is ALLOWED as to the complaint and counterclaims. Under the common law claims for unjust enrichment and conversion, GCL shall recover $21,723.75the amount of the withheld deposit. Under the claim brought under G.L.c. 93A, §11, this Court finds that GCL shall recover twice the amount of the deposit unscrupulously withheld by Naggar, for a damage award of $43,447.50. This Court shall also award GCL the reasonable attorneys fees it incurred to recover its deposit money. GCL shall submit an affidavit setting forth the amount of attorneys fees it contends are reasonable, with appropriate documentation, no later than March 31, 2004. Naggar may respond to this submission no later than April 16, 2004. A hearing on the question of attorneys fees shall be conducted on April 26, 2004 at 2:00 p.m.